## 8145

### WILCOX v. SOUTHERN RY.

1. GROUPING EXCEPTIONS commended.

2. CARRIER — PASSENGER — INTERSTATE TICKET — SCHEDULES. — Where a passenger is traveling on an interstate ticket and procures a stop-over between points within the State and sues for damages caused by being misinformed as to train schedules, the right of the passenger to a stop-over on an interstate ticket does not arise.

3. IBID. — IBID. — TICKET COLLECTOR — SCHEDULES — PRINCIPAL AND AGENT.—It is within the scope of the duty of a ticket collector, from the evidence here, to inform a passenger as to schedules of trains on his own road.

4. IBID. — IBID. — SCHEDULES — NEGLIGENCE — WILFULNESS — ISSUES.— Whether the misinformation given a passenger by a ticket collector as to the schedules of a train was mere inadvertent or reckless or wanton under the proof here was a matter for the jury.

5. IBID.—PUNITIVE DAMAGES—CHARGE.—When the instruction that the passenger is entitled to punitive damages for "any alleged and proved unlawful act of defendant" is considered with its connections it is held not to be error, but a statement of the law as to punitive damages for misinformation given a passenger as to schedules.

6. PUNITIVE DAMAGES.—AN INSTRUCTION that the jury should award punitive damages if they find the facts such as to warrant them is correct.

7. CARRIER—PASSENGER—CONDUCTOR—SCHEDULES—DAMAGES.—Where a conductor misinforms a passenger as to schedules on his own road, the carrier is liable for any actual damages resulting to the passenger therefrom.

8. IBID.—IBID.—DAMAGES—ISSUES.—Whether the passenger in this case could have lessened his damages by taking another train on another road, and whether the train actually ran at that time, and other kindred questions, were properly sent to the jury.

MR. JUSTICE WOODS *thinks there was no evidence of wilfulness in this case.*

Before WATTS, J., Union, May term, 1911.    Affirmed.

Action by J. P. Wilcox against Southern Railway. Defendant appeals.

*Messrs. Sanders & DePass,* for appellant, cite: *Provisions of interstate ticket:* Sec. 15 Interstate Com. Law; Barnes on Interstate Transportation, sec. 570, Sub. A. & E. *Ticket collector cannot make contract of passage:* Code 1902, 2163, 2571; 2 Hutch., sec. 117; 1 Elliott, sec. 302; 3 Thomp. on Neg., sec. 2571. *Punitive damages should not have been sent to the jury:* 5 Rich. 17; 37 S. C. 194; 37 S. C. 377; 58 S. C. 143; 35 S. C. 488; 44 Am. St. R. 474; 69 S. C. 434; 81 S. C. 143; 56 S. C. 531; 87 S. C. 193. *Instructions to award punitive damages is improper:* 11 Rich. 285, 649; 16 S. C. 439; 21 S. C. 599; 34 S. C. 324; 2 Thomp. on Trials, sec. 2065.

*Mr. J. G. Hughes,* contra, cites: *Duty of railway agent to inform passenger as to schedules:* 75 S. C. 289. *Appellant is liable for punitive damages:* 75 S. C. 289; 79 S. C. 150; 64 S. C. 424; 79 S. C. 150; 88 S. C. 54; 39 S. C. 162; 71 S. C. 532; 75 S. C. 142; 89 S. C. 570, 301. *Passengers are not presumed to know the rules of the carrier, nor the limitations of agent's authority:* 88 S. C. 426.

March 23, 1912. The opinion of the Court was delivered by

MR. JUSTICE FRASER. This is an action by the plaintiff-respondent against the defendant-appellant, for damages arising out of alleged misinformation given to the plaintiff by the agent of the defendant. The plaintiff, being in the city of Columbia, S. C., purchased of the agent of the defendant a ticket from Columbia, S. C., to Atlanta, Ga., over defendant's road by Spartanburg.

The plaintiff claims that on the way between Columbia and Spartanburg, and before he reached Union, S. C., he learned that he would have to wait in Spartanburg seven hours; that he inquired of the ticket collector of the defendant on the train, if he could stop at Union and take a later

train on defendant's road, that would allow him to catch the train from Spartanburg to Atlanta; that the ticket collector was the only agent of defendant he saw on the train, and the ticket collector told him there was a later train by which he could catch the train from Spartanburg to Atlanta; that he explained to the ticket collector that it was necessary for him to catch the Atlanta train that night; that the ticket collector had already "punched the ticket to Spartanburg," but took it back and made an entry on it to indicate that it had been used only to Union, and returned it to the plaintiff. That relying upon the information that he had received from the ticket collector, he left the train at Union; that later in the day he found that there was no train until the next day and he did not get to Atlanta until too late to transact his business and thereby lost the sale of goods and his profits thereon, was put to expense occasioned by his delay in Union, etc.

The defendant admitted that the plaintiff was a passenger on said train and that he disembarked from said train at Union, but denies that the plaintiff was damaged or that he was misinformed by the ticket collector. The defendant contends that the ticket collector had no authority to furnish any information as to the running of trains; that his sole business was to take up the tickets. That the plaintiff could easily have obtained the information from its agent in Columbia, or from printed folders, or The State newspaper, in which the running of its trains was published. That the plaintiff was careless and negligent in not procuring necessary information before disembarking at Union, and it was his duty to minimize his damage, and he could have done so by taking a train on the Seaboard Air Line Railroad, which would have enabled him to get to Atlanta in time to meet his appointments, if he had any.

The defendant further claims that the plaintiff purchased an interstate ticket, and by the rules of the Interstate Com-

merce Commission, no stop-over was allowed except for sickness.

There are thirteen exceptions and many subdivisions. The Constitution, article V, section 8, provides:

"That every point made and distinctly stated in the cause and fairly arising upon the record of the case, shall be considered and decided."

This does not prevent an appellant from abandoning an exception, nor the grouping of similar exceptions. This practice of grouping exceptions is to be commended. It enables the Court to decide principles of law for the guidance of people in future transactions. In the argument the appellant has made seven groups and we will adopt his grouping.

1. Appellant complains that his Honor erred in allowing the plaintiff to introduce evidence tending to prove a promise or statement on the part of the ticket collector, to the effect that the plaintiff would be allowed to stop over and take a later train on the same day, in time to make his connection in Spartanburg that night, the objection being:

(a) That plaintiff was traveling on an interstate ticket. The question as to plaintiff's right under an interstate ticket does not arise in this case. If the plaintiff had undertaken to use that ticket between Union and Spartanburg and it had been refused, then the question would have arisen, but plaintiff did not attempt to use the ticket, and the effect of a stop-over is not germane to the issue here.

(b) Plaintiff objects further to the conversation with the ticket collector, on the ground that the ticket collector's duties and agency was confined to collecting fares of passengers on this particular train, and he had no authority to make statements in reference to the running of other trains; and seems to further limit the collector's right to furnish information as to trains that do run and not to trains that do not run.

In the case of *Ford* v. *The Railroad,* 75 S. C. 289 and 290, 55 S. E. 484, the Court held the railroad company responsible for misinformation, even though it was given by the flagman.

In the case now before us the evidence shows the following: "And it is a matter of duty to give? We would naturally do that, give the information. We would not give the erroneous information. Is it your duty to give the information when asked, though? Yes, sir; correct information."

This was the testimony of the defendant's witness and the conductor in charge of the train.

In the examination of Mr. Bryan, the ticket collector, when he was examined on the same subject, he said in reply to the question: "It was your duty to do it? Yes, sir."

In view of this case and this testimony, this Court cannot say as a matter of law that the ticket collector was not acting within the scope of his authority, when he undertook to give the information. This group is overruled.

2. The second statement of error is, that his Honor ought to have directed the verdict to be rendered in favor of defendant on the question of punitive damages and not have submitted this question to the jury. We can not see that his Honor was in error here. Whether this information was mere inadvertence or a reckless, wanton disregard of the plaintiff's rights, was a question for the jury, and his Honor, the presiding Judge, had no right to take that question from the jury.

The appellant thinks that the fact that the later train had been taken off was so widely known that every passenger ought to have known it. If the passenger ought to have known it, certainly the ticket collector ought to have known it.

Now, whether the plaintiff asked the question or no, whether the ticket collector answered recklessly and wantonly, or because he did not hear or understand the question,

were questions for the jury and his Honor had no right to take the question from them. Conduct may be so reckless that a jury may be warranted in saying that it was a wilful disregard of duty and these facts were for the jury and not for the Court.

3. The appellant complains, "His Honor, it is respectfully submitted, erred in his charge in the following particulars:

(a) In instructing the jury, at the request of the plaintiff as follows: "14. In assessing punitive damages the jury may take into consideration inconvenience, annoyance, delay and humiliation caused plaintiff by any alleged and proved unlawful act of the defendant." The error complained of is in the use of the term "any alleged and proved unlawful act of the defendant," thereby allowing the plaintiff to recover punitive damages for mere negligence, which was unlawful, as well as for reckless, wanton and wilful conduct. This instruction was commenced with the words "in assessing punitive damages," and simply told the jury the elements which went to make up punitive damages. His Honor had already fully instructed the jury as to the difference between actual damages for mere negligence, and punitive damages for wilfulness. The charge was remarkably strong and clear; the language is as follows:

"If the ticket collector or conductor intentionally and knowingly or maliciously or wilfully misinformed him and it was a wilful, intentional, malicious act on their part, and did advertently and intentionally give him the wrong information, in order to embarrass him, then under circumstances of that sort, if you think that he was damaged and it was a wilful, high-handed, outrageous, intentional invasion of his right, and they intentionally and knowingly misled him, and they did it on purpose, and advertently did it, then under circumstances of that sort he would be entitled to recover not only such actual damages as he sustained, but such dam-

ages in the way of punishment as you see fit to award him under all the testimony in the case."

His Honor had also told the jury: "If, however, the agent of the defendant company carelessly and negligently misinformed him and told him there was another train coming, and he acted on that, and that was the direct proximate cause of any actual damage to him in his purse, then, under circumstances of that sort, he would be entitled to recover any actual damages he sustained proportionate to the injuries sustained."

It is hard to see how the jury could have been misled by the charge, which was intended merely to set out the elements of punitive damages.

(b) Appellant complains that his Honor also erred in charging the plaintiff's tenth request, to wit:

"The jury may infer wilfulness or wantonness from the facts in the case. This point is settled by what we have said before. If there were facts from which the jury might infer wilfulness or wantonness, there was no error in the charge. If the jury may, then they may not, and this does not indicate any opinion. This subdivision is overruled.

The appellant further complains: (c) His Honor erred in charging plaintiff's 12th request, to wit:

12th. "If a conductor or other agent of a railroad company gives a passenger information as to his journey and connections, it is his duty to give correct information; and if the jury finds that the passenger was misled through information negligently, carelessly or recklessly given by such agent of the railroad company, then the railroad company is liable, and the jury may award both actual and punitive damages not exceeding the sum sued for."

This question has already been settled above by reference to the testimony and the Ford case.

Besides his Honor modified the request as follows: "I charge you that with this modification they can award actual damages, where the proof makes out a case of actual dam-

ages, and in addition, they can award punitive damages where the facts make out such a case, showing a wilful, wanton and high-handed invasion of the plaintiff's rights, and such a case as under the law as I have given it to you, the plaintiff would be entitled to punitive damages."

4. Appellant complains, "But in any event we submit, his Honor erred in charging the plaintiff's 5th request, to wit:

5th. "The jury has a discretion in fixing the amount which shall be awarded by way of exemplary damages, but it is not within their discretion to refuse to award any exemplary damages where a case is made, which in law justified such damages."

The appellant complains that his Honor ought to have said "might award" or "may award," and that it was in the discretion of the jury, even though wilfulness, wantonness and intentional wrong was proved, not to give punitive damages. This question is settled in this State in the case of *Dagnall* v. *The Southern Railway,* 69 S. C. 116, 48 S. E. 97, where the Court reaffirms the case of *Griffin* v. *The Southern Railway,* in 65 S. C. 127, and says:

"The Court, speaking by Mr. Justice Gary, said: 'The plaintiff is as much entitled to the damages arising from an act of intentional wrong as those growing out of negligence.' "

This subdivision is overruled.

5th. Appellant says: "The point raised by our 7th exception has already been fully discussed under our second proposition. We respectfully ask the Court's attention to that portion of appellant's argument.

The remarks of the presiding Judge fully cover the point; and we quote the request to charge and his Honor's remarks:

7. "If a railway company does publish its schedules, giving the time for the departure and arrival of its trains, then if a passenger intending to go from one point to another

does enter into a contract with such railway company to be carried as a passenger and purchases a ticket, and enters into a contract with the railway company for a continuous journey from one point to another, and gets on a train which would carry him to his destination, then if the evidence shows that there was no other train scheduled to leave such point on the same day, I charge and instruct you that a mere conductor has no authority, after such journey is commenced, to enter into a contract with such passenger for his being transported from some intermediate station at a later hour."

And in response to this request, charged as follows:

"I refuse to charge you that, the latter part of it, the first part is good law; but as to whether or not the conductor in this case, or the party in charge of the train, gave wrong information to the plaintiff upon which he acted, and if he honestly acted upon that, and it was carelessness and negligence on the part of the conductor in giving that information, and that carelessness and negligence on their part was the direct and proximate cause of any injury to the plaintiff, then, under circumstances of that sort, he would be entitled to recover such actual damages as he sustained in proportion to the injury sustained." This subdivision is overruled.

6. Appellant says: "We have already discussed the power and authority of a mere ticket collector to bind the defendant by statement or promise made in reference to a train which was not scheduled to run, and shall not repeat the argument here. If the ticket collector, as we contend, has no authority to bind the railroad by any such statement or promise, then the requests brought in our 7th and 8th requests * * * were sound and should have been charged without modification."

What we have said before is applicable here, and this group is overruled. This was not a contract to carry the

plaintiff from Union to Spartanburg on a special train; it simply was a question as to whether the plaintiff had been misinformed or no, and that question was for the jury.

The 7th and last specification of error was as follows: "In any event, his Honor should have granted a new trial for the following reasons:

(a) The verdict was contrary to the law, as given by the Court. His Honor instructed the jury, as requested by defendant, in its 13th request, to wit: "13th. I charge you and instruct you that it is the duty of one to use all reasonable means at his command to lessen his injury, and if the evidence shows that a person failed to do this when, if he had used the means at his command, no injuries would have come to him, then he cannot recover damages."

Appellant claims that the plaintiff could have gone from Union to Atlanta by another route and have gotten there in time to keep his appointment, and that it was his duty to have done so and have lessened his damage, if practicable. Could he have gone by that route? Did he know of it? Did he have the means to go? Did the train actually go that night? These were questions for the jury, and we cannot say any more than his Honor, the presiding Judge, whether the plaintiff ought to have gone by the Seaboard Air Line or not, and this subdivision is overruled.

Appellant objects—

(b) "Because his Honor should at least, have reduced the verdict to the actual loss of the plaintiff."

That may be, if there were not some evidence to carry the case to the jury on the question of wilfulness and recklessness, but that was a question for the jury.

The judgment of this Court is, that the judgment of the Circuit Court be, and the same is hereby affirmed.

MR. JUSTICE WATTS *disqualified.*

MR. JUSTICE WOODS, *dissenting.* The only allegation in the complaint of a wilful and wanton violation of the rights of the plaintiff is that the conductor or ticket collector on the train wilfully and wantonly gave the plaintiff incorrect information as to the time within which he could leave Union and reach Atlanta on one of defendant's trains. There is no evidence whatever supporting this allegation. On the contrary, the plaintiff's own evidence shows that the ticket collector treated him with a courtesy and consideration which negatived any intention to disregard his rights as a passenger. The ticket collector, according to plaintiff's evidence, misled the plaintiff by his erroneous statement as to the defendant's schedules, and for the consequences of the error the passenger was entitled to recover his actual damages; but the error of the ticket collector should not be held malicious, or wilful, or wanton without evidence that it was so, either extraneous or in the circumstances under which the error was committed. The many errors of men are looked upon as mistakes due to human fallibility or to negligence, unless there is some evidence either direct or circumstantial of malice, or wilfulness, or wantonness. Neither in ethics nor in law is there place for the harsh rule that malicious, or wilful, or wanton disregard of the rights of others is to be presumed from proof of a mere error or mistake.

I think the judgment of the Circuit Court should be reversed.