14470

SAMPLE v. GULF REFINING CO.

(191 S. E., 209)

June, 1935.

*Messrs. Hendersons & Salley,* for appellant,

*Messrs. Williams & Busbee,* for respondent,

April 20, 1937.

The opinion of the Court was delivered by MR. CHIEF JUSTICE STABLER.

The appellant, Gulf Refining Company, a large producer and wholesale distributor of gasoline, motor oils, and other petroleum products, and the respondent, Broadus J. Sample, entered into an agreement on March 13, 1934, providing for the handling by Sample of various Gulf Refining Company products at his place of business at Schultz Hill in Aiken County, S. C., during the period from March 13, 1934, until March 12, 1935, unless sooner terminated as provided by the agreement. The contract between the parties consisted of four separate documents, executed at the same time and as one transaction, one of them covering the sale by Gulf Refining Company of its products to Sample and the purchase of these products by Sample, one regulating credit sales by Sample on the presentation of courtesy cards issued by Gulf Refining Company, one providing for the installation by Gulf Refining Company of equipment for the storage and handling of the products at Sample's place of business, and one granting a license to Sample to market and resell the Gulf Refining Company products.

The instrument covering the sale by Gulf Refining Company of its products to Sample and the purchase of the products by Sample, with other stipulations, provided as follows:

"Now this memorandum witnesseth, that the party of the first part sells and agrees to deliver to the party of the second part and the party of the second part purchases and agrees to receive from the party of the first part, during the term of this contract, second party's entire requirements of petroleum products, estimated as follows:

"That Good Gulf Gasoline—Maximum 20,000 gallons; Minimum 15,000 gallons per annum.

"Gulf No-Nox Motor Fuel—Maximum ...... gallons; Minimum ...... gallons per annum.

"Gulf No-Nox Ethyl—Maximum 5,000 gallons; Minimum 3,000 gallons per annum.

"Traffic Gasoline—Maximum ....... gallons; Minimum ....... gallons per annum.

"Supreme Motor Oil—Maximum 300 gallons; Minimum 200 gallons per annum.

"Gulflube Motor Oil—Maximum 300 gallons; Minimum 200 gallons per annum.

"Gulfpride Motor Oil—Maximum 100 gallons; Minimum 75 gallons per annum."

It will be observed that while an estimated maximum and minimum number of gallons is stated as to all other products, there is no maximum or minimum provided for "Gulf No-Nox Motor Fuel" and "Traffic Gasoline," thereby indicating, as we think, that the contract was written on a form in general use by the company containing a list of various trade-names or brands of products, so that the quantities could be filled in as the occasion might require, and that it was not contemplated that the products for which no quantities were provided were to be covered by the contract.

"Traffic" gasoline, one of the two brands as to which no quantities to be taken were provided by the contract, is a low-grade gasoline, usually selling from 2 to 3 cents a gallon cheaper than the standard grades, and for some time prior to July 31, 1934, Sample had been trying to induce Gulf Refining Company to deliver to him and to permit him to sell "Traffic" gasoline at his place of business, because he thought it would greatly incease his gasoline sales and improve his business generally; and although the company was disinclined to permit the sale of this low-grade gasoline in the territory in which Sample was engaged in business, and

for a time refused the request, yet finally it assented, and on July 31, 1934, delivered and placed in one of the tanks at Sample's place of business 102 gallons of "Traffic" gasoline, for which Sample paid the company in cash. Sample placed appropriate signs on the tank and about his place of business advertising his purpose to handle the "Traffic" gasoline, and by the following day he had sold nine gallons.

On the following day, August 1, 1934, prompted by protests from other distributors and wholesalers of gasoline and motor oils, who thought that the placing of cheap low-grade gasoline in this territory would adversely affect the trade, Gulf Refining Company reversed its decision to permit Sample to sell the "Traffic" gasoline, and sent one of its employees to Sample's place of business with instructions to remove the "Traffic" gasoline and bring it back to the company's distribution station. When the company's representative reached Sample's place of business, for the purpose of withdrawing and taking away the "Traffic" gasoline, Sample was absent, and one J. M. Hightower was in charge.

The company's representative claims that Hightower voluntarily permitted him to withdraw the gasoline from the tank, furnished him the pump keys for that purpose, and helped him withdraw the gasoline; but this is denied by Hightower, who says that the company's representative procured the keys for himself and withdrew the gasoline without his assistance or consent and over his protest. In any event, however, the company's representative removed 93 gallons of the "Traffic" gasoline, all that remained in the tank, either painted out or scraped off the "Traffic" gasoline sign on the tank, and carried the gasoline back to the company's distribution station. Though denied by the company, there is also testimony to the effect that the other signs about the premises advertising the "Traffic" gasoline were required to be removed.

After the removal of the gasoline, the company offered to pay Sample for it, but he refused to accept payment, and the

tender of payment has since been kept alive and brought into Court. On August 2, 1934, the day following the removal of the "Traffic" gasoline, the company returned it to Sample's place of business, and offered to put it back in the tank, but this offer was also declined.

On August 4, 1934, Sample instituted this action against Gulf Refining Company, seeking both actual and punitive damages, and alleging as ground for recovery the wrongful taking and carrying away of the "Traffic" gasoline, for which Sample had fully paid in cash, and the resulting injury to Sample and his business. Gulf Refining Company duly answered the complaint, and alleged by way of defense that the gasoline had been removed with the permission and authority of Sample's agent, and also pursuant to verbal agreement with Sample giving the company the right to withdraw the gasoline at any time that it deemed advisable, as well as pursuant to authority contained in the written agreement between the parties. By leave of the Court a supplemental answer was subsequently served alleging by way of additional defense that on July 31, 1934, prior to the removal of the "Traffic" gasoline, Sample had sold his entire stock in trade, including the "Traffic" gasoline in question, to C. F. Hightower, and that Sample, therefore, had no cause of action.

The trial of the case resulted in a verdict in favor of Sample for $217.07 actual damages and $2,782.93 punitive damages. A motion for a new trial having been made and refused, judgment was entered in accordance with the verdict of the jury, and this appeal ensued.

As grounds for reversal of the judgment of the Circuit Court, the appellant alleges error in the admission and exclusion of testimony, in instructions given to the jury, in the refusal to give instructions requested by appellant, and in the refusal to grant a new trial, or to reduce the damages awarded, both actual and punitive.

We think there was no error, as contended by appellant, in admitting the testimony of W. Mack Croft to the effect that business at his filling station increased after he commenced to sell "Acto," a cheap grade of gasoline distributed by another oil company. Appellant insists that the testimony was erroneously admitted, because the conditions surrounding Croft's filling station and Sample's station were not shown to be the same, and the gasoline was produced by a different company. The testimony shows that the two filling stations are located about one mile apart on the same road, that the station of Sample is the nearest station in the State to the station of Croft, and that "Acto" and "Traffic" gasoline are both third-grade gasolines. This certainly indicates at least some degree of similarity of conditions in substantial respects and while the weight of the testimony possibly might increase correspondingly with the appearance of greater similarity of conditions, yet this is something that relates to the weight of the testimony rather than to its competency.

We likewise think that there was no prejudicial error in permitting respondent to testify as to a conversation with appellant's employee, Ed Howard, on the afternoon of August 1, after the gasoline had been removed from respondent's place of business at Schultz Hill. This testimony is said to have been erroneously admitted for the reason that it was not a part of the *res gestae* and not within the scope of Howard's employment. If it be conceded that the testimony was erroneously admitted when given, the error was made of no consequence by the fact that appellant later called Howard as a witness, and without reserving objection to the testimony went into the conversation fully, and disclosed the additional important fact that Howard was then acting in behalf of Gulf Refining Company in relation to this controversy, under instructions from the local manager of the company's business.

To establish the defense that respondent was not the owner of the "Traffic" gasoline when it was removed, appellant offered secondary evidence of the contents of an alleged chattel mortgage from C. F. Hightower to B. J. Sample, dated July 31, 1934, covering the "Traffic" gasoline in controversy, as well as certain other gasoline, oil, and merchandise, and marked paid by B. J. Sample, the original of which respondent's counsel had been given notice to produce. The evidence was excluded, and this is assigned as error.

The original of a document is, of course, the best evidence as to its contents, and before the receipt of secondary evidence can be required, it is necessary for the party offering the evidence to make certain preliminary proof to establish the necessity and propriety of the receipt of the secondary evidence in place of the original document; and while the sufficiency of this preliminary proof does not rest in the uncontrolled discretion of the trial Judge, as statements in some of the cases seem to imply, yet at least some if not a large measure of discretion in this respect necessarily is vested in the trial Judge. *Hobbs v. Beard,* 43 S. C., 370, 21 S. E., 305; *Norris v. Clinkscales,* 47 S. C., 488, 25 S. E., 797; *Uzzell v. Horn,* 71 S. C., 426, 51 S. E., 253; *Atlantic Coast Line R. R. Co. v. Dawes,* 103 S. C., 507, 88 S. E., 286. Obviously, there also must be some proof tending to show the former existence and execution of the original instrument. 22 C. J., 1042; *Howell v. House* (2 Mill, Const.), 9 S. C. L., 80; *Uzzell v. Horn, supra; Vance v. Ferguson,* 101 S. C., 125, 85 S. E., 241.

Sample positively denied that such a paper had ever existed, and there was no definite or satisfactory proof otherwise that it had ever been delivered as a binding obligation and completed transaction, or acted on in any way, nor was there any testimony whatever that B. J. Sample signed the purported satisfaction appearing thereon, other than the statement of the witness, Ed Howard, that C. F. Hightower told him that it was Sample's handwriting,

which was plainly insufficient and incompetent for that purpose. *Bourquin v. Northwestern R. R. Company*, 79 S. C., 217, 60 S. E., 521. In addition to these considerations, the alleged original instrument was shown to be in the possession of C. F. Hightower, and beyond respondent's power to produce in response to the notice; and although testimony was offered to the effect that the paper was seen in the possession of Hightower at his place of business in Augusta, Ga., beyond the jurisdiction of the Court, yet there was also testimony to the effect that Hightower had actually resided in Aiken County while running a business in Augusta, and there was no clear or satisfactory proof that Hightower, the party having possession of the alleged document, no longer resided in South Carolina, and was not within the reach of the process of the Court. Under these circumstances, we do not feel justified in holding that appellant has discharged the burden of showing that the testimony was erroneously excluded.

Several of appellant's exceptions to the charge of the Circuit Judge are expressly predicated upon the proposition that the right to remove the "Traffic" gasoline or any of appellant's other products from respondent's place of business was reserved to appellant by the following provision of the contract for sale of Gulf products to respondent: "First party shall have the right from time to time during the life of this agreement to change, alter, amend or eliminate any of the trade names or brands of products covered by this contract." We cannot assent to this proposition. Unless this provision of the contract is to be greatly extended beyond what it plainly says, it only confers the right to change, alter, amend, or eliminate "any of the trade names or brands of products" and not the products themselves. Consideration of the several documents comprising the entire contract between the parties quite clearly indicates that the expression "trade names or brands of products" is not used in such sense as to include the products themselves. The

right asserted by appellant, and which it says is given by this provision of the contract, is to remove any product at its pleasure and to repurchase it at the price paid therefor, but this right, if given at all, is reserved under the fourth paragraph of the license for the sale of Gulf products, and can only be exercised on twenty-four hours' previous notice; which it is not claimed was given to respondent. It is also not unreasonable to assume that the contract of the parties was committed to forms prepared by appellant, and since appellant was the author of the language used, it ought not to be extended, at appellant's instance, by construction or implication beyond its plain import.

Appellant also complains of the instruction to the jury that the right to sell "Traffic" gasoline was not given to respondent by any written agreement between the parties, and strongly insists that the sale of "Traffic" gasoline was governed by the written agreement, obviously for the purpose of showing that the removal of the gasoline was justified by the provision of the written contract just discussed. While we agree with the Circuit Judge that the sale of "Traffic" gasoline was not covered by the written agreement, yet it is immaterial which view is accepted, because the removal of the gasoline in the manner adopted by appellant was not authorized by the written agreement. For this reason, the instruction given to the jury to the effect that defendant alleged that the handling of "Traffic" gasoline was governed by a verbal contract, of which appellant also complains, was likewise harmless, if its inaccuracy be conceded.

The Circuit Judge properly refused to charge appellant's fourth request to the effect that no punitive damages could be awarded against the defendant. The testimony clearly required the submission of that issue to the jury. A perfectly simple way was provided under the contract of the parties by which the appellant could lawfully remove the "Traffic" gasoline from sale after giving twenty-

four hours' previous notice, of which it fairly may be assumed that appellant was fully cognizant, and one of the reasonable inferences that could be drawn from the testimony is that appellant voluntarily chose to ignore the lawful way and adopt the more expeditious but unauthorized way.

There was also no error in charging plaintiff's third request containing the proposition that it would be the duty of the jury to award punitive damages, if it found that respondent's rights had been consciously, willfully, and recklessly violated. While there is authority in other jurisdictions to the effect that the award of punitive damages rests in the discretion of the jury (17 C. J., 971), yet under the settled rule prevailing in this State punitive damages are awarded not only as punishment for a wrong, but also as vindication of private right, and when under proper allegations a plaintiff proves a willful, wanton, reckless, or malicious violation of his rights, it is not only the right but the duty of the jury to award punitive damages. *Dagnall v. Southern Ry.,* 69 S. C., 110, 48 S. E., 97; *Beaudrot v. Southern Ry.,* 69 S. C., 160, 48 S. E., 106; *Wilcox v. Southern Ry.,* 91 S. C., 71, 74 S. E., 122.

One of appellant's requests to charge was as follows: "The jury is further charged that if you find that the defendant honestly believed that it had the right to withdraw said Traffic gasoline from sale by the plaintiff under the provisions of the contract and there was no wilfulness on its part to injure the plaintiff or his business, then, under such circumstances, you should find no punitive damages against the defendant for so doing." After reading the request to the jury, the Court said: "I charge you that unless the defendant was so grossly negligent in determining whether or not it would injure and damage his business. If they honestly believed that they had that right under the contract, and went about it in the proper manner, they could not be held liable for punitive damages." Appellant contends

that this modification of the request was erroneous and prejudicial, and we are constrained to agree.

While punitive damages are recoverable for negligence so gross or reckless of consequences as to imply or to assume the nature of wantonness, willfullness, or recklessness, yet they are not awarded in this State for mere gross negligence. *Watts v. South Bound R. R. Co.,* 60 S. C., 67, 38 S. E., 240; *Proctor v. Southern Ry. Co.,* 61 S. C., 170, 39 S. E., 351; *Boyd v. Blue Ridge Ry. Co.,* 65 S. C., 326, 43 S. E., 817; *Webb v. Atlantic Coast Line R. R. Co.,* 76 S. C., 193, 56 S. E., 954, 9 L. R. A. (N. S.), 1218, 11 Ann. Cas., 834. Doubtless the Circuit Judge intended to convey to the jury the idea that punitive damages might be awarded, if the defendant was guilty of negligence so gross as to amount to willfullness or recklessness, but that is very far removed from what he actually said, and it would seem, as he said in referring to this in his order overruling the motion for new trial, that "the mind of the Court was running ahead of the tongue." The conclusion cannot fairly be avoided that the jury was reasonably warranted in assuming from the Court's modification of appellant's request that it was at liberty to award punitive damages for gross negligence. The proposition of law which the Court probably had in mind and intended to charge, as above indicated, was nowhere else stated or referred to in the charge, so that it could be said that the inaccurate statement should be taken in connection with the correct statement of the rule elsewhere, on the theory that a particular part of the charge must be considered in the light of the charge as a whole; and the prejudicial character of the instruction was still further enhanced by the fact that it was given as a modification of a substantially sound request. We cannot assume that the instruction had no effect upon the jury, or that the jury was not misled, unless we further unwarrantably assume that it paid no heed to the instructions of the Court.

The remaining grounds of appeal are without substantial merit, and do not require detailed consideration. The objection that the charge did not sufficiently amplify the basis and measure of damages fails to point out any particular in which the charge should have been amplified, and if there was any further amplification of the charge desired, it was incumbent upon appellant to call it to the Court's attention and to file a request therefor. The request to charge that no damage could be awarded for injury to respondent's business was properly refused. We think there was some testimony from which it could properly be inferred that some injury was done to the business, and we are not inclined, nor do we think it necessary, to enter upon an extended consideration of the suggestion that such damage is too uncertain, speculative, and remote to be properly reflected in the verdict of the jury. Appellant admittedly took into its possession and carried away property belonging to respondent, and the jury's verdict has established that appellant had no justification in doing so. To appropriate the language of Mr. Justice Gage in *Saine v. Hertzog,* 106 S. C., 501, 91 S. E., 859, 861, a case involving a somewhat similar situation, the essence of respondent's action lies in the circumstance that his "right was trampled upon." "In such a case the legal scales may not be too nicely and too artificially adjusted. Their draw and their correction ought in most cases to be left to a jury and to the trial Court." The moderate amount of actual damage awarded was certainly not excessive, nor the result of caprice, passion, or prejudice.

The judgment of the Circuit Court is reversed, and the case is remanded for a new trial.

MESSRS. JUSTICES BONHAM, BAKER and FISHBURNE concur.

MR. JUSTICE CARTER (dissenting): Considering the charge as a whole, I am satisfied that the jury was not misled and that the defendant was not prejudiced. It is, there-

fore, my opinion that the judgment should not be reversed, but should be affirmed.