**WESTERN EMPIRE PETROLEUM COMPANY et al., Appellants,**

**v.**

**James T. DAVENPORT et al., Appellees.**

No. 13400.

Court of Civil Appeals of Texas.

San Antonio.

Nov. 26, 1958.

Rehearing Denied Dec. 17, 1958.

Hugh H. Meyer, Hondo, for appellants.

Frank X. Vance, Hondo, for appellees.

POPE, Justice.

This appeal concerns the construction of the terms of a drilling contract.

On October 2, 1956, plaintiffs, James T. Davenport, James V. Reynolds and T. F. Harrington, owned oil and gas leases on the 15,594 acre Rothe Ranch in Medina County. Defendant, Western Empire Petroleum Company, a Utah Corporation, and plaintiffs entered into a written agreement on October 2, 1956, by the terms of which defendant agreed that within ninety days from October 2, 1956, it would commence drilling operations upon the lease and diligently continue such operations to a depth of 3,500 feet, unless oil or gas in commercial quantities should be obtained at a lesser depth. Defendant agreed to issue to plaintiffs 200,000 shares of its treasury stock upon the execution of the agreement. Plaintiffs agreed to assign 6,500 acres of their Rothe lease to defendant, and also to sell defendant another 2,000 acres at $5 per acre. In accord with the agreement, plaintiffs then placed the assignments to defendant of 6,559 acres of the lease in escrow with Security Title Insurance Company of Los Angeles, California, until a reputable petroleum engineer or Davenport, one of the assignors, notified the escrow agent in writing that defendant had spudded in and had equipment on hand capable of drilling to the depth of 3,500 feet.

· Defendant did not commence the well within ninety days, and on February 18, 1957, the parties entered into an amendment to the October 2, 1956, agreement. Its provisions embrace the clause which we are called upon to interpret. It was agreed that upon execution of the amendment plaintiffs would deliver oil and gas leases upon 2,000 acres, in consideration of cash and notes. That part of the agreement is not in dispute. It was further agreed as follows:

"It is also mutually agreed that the balance of 6,500 acres shall be delivered upon the execution of this agreement with the express agreement that in the event a well is not completed or drilled to a depth of 3,500 feet on or before June 26, 1957, second party will pay rentals thereon; quitclaim to first party all of said acreage, or pay to first party the sum of $5.00 per acre for said leases."

▮▮▮ Defendant did not complete the well to a depth of 3,500 feet before June 26, 1957, but did pay the rentals on the 6,500 acres before that date. Defendant now claims the leases, but argues that there is no duty upon it to pay the $5 per acre or to quitclaim. The plaintiffs argue that defendant had to elect to drill or pay the rentals; then it also had to elect either to quitclaim or pay $5 an acre. In our opinion, the instrument has the meaning that the trial court determined by its judgment. Before June 26, 1957, defendant had a choice between completing the well to 3,500 feet or paying rentals. It elected to pay rentals. Significantly, after the contract designated that choice, it inserted a semi-colon. A second logical choice then became necessary, under which defendant could either quitclaim or pay $5 an acre for the lease. It refused to quitclaim, and the court thereupon properly gave plaintiffs judgment for $32,798.88.

Plaintiffs, or their assignees, had to pay the rentals on the 6,559 acres to keep the basic leases alive. It would be an unreasonable interpretation of the amended contract between plaintiffs and defendant to hold that the parties intended that plaintiffs would lose their leases and that defendant should own the leases without drilling or without paying for them. The contract shows that plaintiffs wanted a well drilled and the leases maintained in force. Having done that, defendant could choose whether it wanted to quitclaim or pay for the assignments. The construction claimed by defendant is that the assignments vested it with power to drill or maintain the leases in force by payment of the rentals, after which it would own the leases without any duty to pay any consideration for them.

We do not consider the contract ambiguous. Defendant asks that we disregard the semi-colon, as may be done in some situations. We see no merit to an argument that we should disregard punctuation to create an ambiguity where none exists, and then construe the ambiguity. The contract is unambiguous, its meaning is plain and the trial court correctly interpreted the contract. Highland Farms Corp. v. Fidelity Trust Co. of Houston, 125 Tex. 474, 82 S.W.2d 627; Baker v. Skipworth, Tex.Civ.App., 244 S.W.2d 299; 17 C.J.S. Contracts § 306.

The judgment is affirmed.