19294

Gylet LEWIS, d/b/a Waccamaw Construction Company, Appellant, v. Anthony C. CARNAGGIO and Eulee C. Carnaggio, Respondents

(183 S. E. (2d) 899)

LITTLEJOHN, J., dissented and filed opinion.

*E. Windell McCrackin, Esq.,* of Myrtle Beach, *for Appellant,* cites:

*Messrs. Stevens & Holt,* of Loris, *for Respondents,* cite:

September 29, 1971.

LEWIS, Justice:

Plaintiff, a contractor, constructed a dwelling for defendants under a written contract. Disagreement between the parties as to the contract price for the construction resulted in this action by plaintiff to establish and enforce a mechanic's lien for the balance claimed by him to be due. The sole issue in the lower court and in this appeal concerns the amount of the liability of defendants under the written contract. The amount to be paid depends upon the construction to be placed on the contract, particularly paragraph 3 thereof, which is as follows:

"In consideration of the performance by the said contractor of all of the covenants and conditions contained in this agreement and contained in the plans and specifications the owners agree to pay to the contractor an amount equal to the amount of all material furnished by the contractor and the labor furnished by the contractor together with payroll taxes and Insurance, also together with the sum total of the net amount due the subcontractors performing work or furnishing work for said construction. *The Owners also agree to pay to the contractor, in addition to the amount specified hereinabove, a fee equal to 10% of the actual cost of the said residence, said fee to be paid after completion of said residence and acceptance thereof by the Owners. It is specifically agreed by and between the parties that notwithstanding the agreement hereinabove by the owners shall not be required, under the terms of this agreement, to pay the contractor any amount in excess of the sum of Thirty-Four Thousand, Five Hundred Dollars ($34,500.00) which is the estimated cost of construction, plus the fee provided for herein.*" (Emphasis added).

Plaintiff contends that the foregoing language establishes the contract price as the cost of construction plus ten per-

cent, with the cost of construction not to exceed $34,500.00. Defendant, on the other hand, construes the above provision as providing that the total cost of the building, including the ten percent fee, could not under any circumstances exceed the sum of $34,500.00.

The issues were submitted to the trial judge who, after hearing testimony, construed the contract as limiting the liability of defendants to an amount not to exceed $34,500.-00; from which plaintiff has appealed.

If the contract is read as punctuated, there is no ambiguity in its meaning. In the first sentence of the emphasized portion of paragraph 3 the parties agree that the contract price would be the cost of construction plus ten percent. The following sentence provides that, notwithstanding the previous agreement, the owners (defendants) were not required "to pay to the contractor (plaintiff) any amount in excess of the sum of thirty-four thousand, five hunderd dollars ($34,500.00) which is the estimated cost of construction, plus the fee (10%) provided herein." The clause reading "which is the estimated cost of construction" clearly modifies the antecedent figure of $34,500.00 and restricts its meaning. The phrase "plus the fee provided for herein" is separated from the preceding clause by a comma, showing that it was not included in the preceding clause but was in addition thereto. The fee was therefore recognized as being in addition to the cost of construction. This is the plain grammatical effect of the use of the comma to separate the above phrase from the preceding clause.

Defendants however argue, in effect, that we should disregard the punctuation and determine the true intent of the parties from extrinsic evidence. The lower court adopted this view.

While "punctuation of a written contract, although it may aid in determining the meaning, will not control over words or change a meaning which is plain from a consideration of the whole document and circumstances * * *

58

punctuation is controlling in the construction of a contract which is not ambiguous if read as punctuated but would be ambiguous if read otherwise * * *." 17A C. J. S. Contracts § 306.

When read as punctuated, the present contract is not ambiguous and its meaning is clear. The provisions in question placed a limit of $34,500.00 on the cost of construction of the building and required the defendants to pay, in addition, the contractor's fee of ten percent.

As the court stated in *Western Empire Petroleum Co. v. Davenport,* Tex. Civ. App., 318 S. W. (2d) 903: "We see no merit to an argument that we should disregard punctuation to create an ambiguity where none exists, and then construe the ambiguity."

In the construction of the house, the parties agreed upon certain extra expenditures and it is stipulated that the total cost of construction was the sum of $34,580.30, all of which has been paid except the sum of $1150.06. Plaintiff is therefore entitled to receive, in addition to the foregoing balance, the sum of $3,458.03 which represents ten (10%) percent of the agreed cost of construction; or a total of $4,608.09.

The plaintiff is also entitled to interest on the above balance from the due date which is stated in the contract to be upon "completion of the residence and acceptance thereof by the owners." *Robert E. Lee & Co. v. Commission of Public Works,* 248 S. C. 92, 149 S. E. (2d) 59. Since the present record fails to disclose the exact date upon which the residence was completed and accepted, this must be determined upon remand of the case to the lower court so that interest may be properly calculated.

The judgment of the lower court is accordingly reversed and the cause remanded for the entry of judgment in favor of plaintiff in accordance with the views expressed herein.

Moss, C. J. and Bussey and Brailsford, JJ., concur.

LITTLEJOHN, J., dissents.

LITTLEJOHN, Justice:

I dissent and would affirm the result reached by the lower court.

The lower court held "there is no ambiguity in the contract and the defendants must prevail." Recognizing the possibility of an ambiguity, the court received evidence relative to the true intentions of the parties. Alternatively, the court ruled that if the contract be considered ambiguous, the "* * * testimony preponderates in favor of the defendants."

The opinion of Justice Lewis holds that the plaintiff must prevail because "the present contract is not ambiguous and its meaning is clear."

I cannot agree with either view that there is no ambiguity. I am of the opinion that there is an ambiguity, and accordingly, parol testimony should be considered to determine the true intent of the parties. The evidence shows that the home owner sought fixed-figure bids for the construction of the house involved. He testified that among the fixed-figure bids he reveived was one submitted by the plaintiff for $34,500. The contract actually signed came about through discussions growing out of the $34,500 fixed figure bid. It indicated an effort on the part of the home owner to possibly end up paying less than $34,500, and a willingness on the part of the contractor to give the home owner an advantage.

The contractor admits that he drew the contract. I agree with the lower court that the ambiguity should be construed against the one who made it possible for the ambiguity to arise. The contractor is a builder of some eight to ten years experience; he stated that he had personally drawn some 80 to 90 contracts. The home owner, a restaurant operator, had little or no experience in building-contract matters.

There is abundant evidence to support the ruling of the lower court when it found as an alternate conclusion that

the evidence preponderates in favor of the defendant. The punctuation mark relied upon as a basis for reversing the lower court should not be used to defeat what I conceive to be the true intent of the parties.

Actually, the contractor testified that he copied the paragraph in dispute (No. 3) out of a form book. There is nothing in the record to indicate that any of the parties attached significance to the controversial comma until after the dispute arose. Nor is there evidence that either party at the time the contract was signed, had any understanding of the impact of the comma.

I would affirm the lower court. Let the order appealed from be printed as a part of this dissent.

## ORDER

This matter comes before me upon complaint of the plaintiff, Gylet Lewis, d/b/a *Waccamaw Construction Company v. Anthony C. Carnaggio and Eulee C. Carnaggio,* as the defendants.

The parties by agreement allowed this Court to hear the matter instead of having a general reference, since the prime issue seemed to be the interpretation of certain language as shown by reference to paragraph 3 of a *Construction Agreement* entered into February 26, 1968, between the parties to this cause.

I am herewith attaching a copy of the entire Construction Agreement as the entire agreement should be resorted to in ascertaining the true intention of the parties.

The specific language which is converted is included in paragraph 3 of the contract and is more specifically set forth as follows:

"In consideration of the performance by the said contractor of all the covenants and conditions contained in this agreement and contained in the plans and specifications the owners agree to pay to the contractor an amount equal to the amount of all material furnished by the contractor

and the labor furnished by the contractor together with payroll taxes and Insurance, also together with the sum total of the net amount due the sub-contractors performing work or furnishing work for said construction. The Owners also agree to pay to the contractor, in addition to the amount specified hereinabove, a fee equal to *10%* of the actual cost of the said residence, said fee to be paid after completion of said residence and acceptance thereof by the Owners. It is specifically agreed by and between the parties that notwithstanding the agreement hereinabove by the owners shall not be required, under the terms of this agreement, to pay to the contractor any amount in excess of the sum of Thirty-four Thousand, Five Hundred Dollars ($34,500.00) which is the estimated cost of construction, plus the fee provided for herein."

From the testimony presented, it is conclusive to this Court that the scrivener of the contract was the contractor, Gylet Lewis. Both of the parties maintain that there is no ambiguity in the terms of the contractual obligation as set forth in paragraph 3. The plaintiff maintains that it is a contractual obligation to build a house and charge the owner for all material furnished, labor furnished, payroll taxes and insurance and all other incidentals, which materials and labor are to be paid for by the owner, but which sums cannot exceed Thirty-four Thousand Five Hundred ($34,500.00) Dollars and in addition thereto, in the event that these expenditures equal or exceed the sum of Thirty-four Thousand Five Hundred ($34,500.00) Dollars, there is an additional obligation of 10% of the actual cost of the residence flowing to the contractor. By the testimony presented, it appears that the contractor has expended the sum of Thirty-four Thousand Five Hundred Eighty and 30/100 ($34,580.30) Dollars which is beyond the amount stated in paragraph 3 as herinabove referred to. The plaintiff maintains that 10% of that sum totals Three Thousand Four Hundred Fifty-eight ($3,458.00) Dollars and that there is now due and owing him pursuant to the terms of said contract the sum

of Thirty-eight Thousand Thirty-eight and 30/100 ($38,-038.30) Dollars.

On the other hand the defendants maintain that the contractual obligation, in accordance with the language of the contract, is a cost plus contract not to exceed the sum of Thirty-four Thousand Five Hundred ($34,500.00) Dollars.

This Court, recognizing the respective rights of the parties and their positions, has attempted to ascertain the exact meaning of the contract. In paragraph 2 the following language appears "The Courts look to the intent as well as the specific terms agreed upon; therefore, if an important part of the agreement is omitted in the numbered paragraphs but mentioned above in the paragraph entitled 'whereas,' it would be sufficient to bind the parties to the agreement.

At best, the language in paragraph 3 is poorly worded, and to some degree, there appears to be additional phraseology which further complicates a true and exact structural English interpretation.

The plaintiff maintains that the insertion of the comma between the language "which is the estimated cost of construction, plus the fee provided for herein" as shown in paragraph 3 means that the estimated cost of construction modifies the Thirty-four Thousand Five Hundred ($34,500.00) Dollars and that the insertion of the comma prior to the words "plus the fee provided for herein" carried with it the intent that the cost of construction is not to exceed Thirty-four Thousand Five Hundred ($34,500.00) Dollars, and that a ten (10%) percent fee of that sum would be allowable by the added words.

I am not inclined to agree with this interpretation. The words "notwithstanding the agreement hereinabove," in my opinion, knocks out the provisions of paragraph 3 which appeared before the last sentence and makes this a cost plus contract not to exceed the sum of Thirty-four Thousand Five Hundred ($34,500.00) Dollars. It is further my

opinion that the language "which is the estimated cost of construction, plus the fee provided for herein" modifies Thirty-four Thousand Five Hundred ($34,500.00) Dollars.

As stated hereinabove, it appears conclusive to the Court that the plaintiff-contractor prepared the contract and as to the consideration to be paid, parol evidence is admissible to explain exactly what the parties intended. Acting with an abundance of precaution, this Court recognizing that there possibly could be ambiguity, additional evidence was received as to the true intention of the parties. I have had this testimony transcribed to assist the Court. I find that this testimony preponderates in favor of the defendants. The plaintiff-contractor having inserted the language "plus 10% provided for herein" would be bound by the following rules of law:

"[A] contract should not be extended by construction or implication beyond its plain import for benefit of party who was author of language used." *Sample v. Gulf Refining Co.*, 183 S. C. 399, 191 S. E. 209.

"The rule of law is, that a doubt shall be solved against him whose business it was to speak without ambiguity." *Murray v. Texas Co.*, 172 S. C. 399, 174 S. E. 231.

"[A] contract provision which does not clearly express intention of parties should be construed against the one for whose benefit it was inserted." *Tuten v. Bowden*, 173 S. C. 256, 175 S. E. 510.

As stated heretofore, it is the feeling of this Court that there is no ambiguity in the contract and the defendants must prevail. However, in the event there is ambiguity, such ambiguity appears relative to the sum total to be paid for the contractual obligation in the erection of the residence of the defendants. Since this involved consideration, parol testimony is admissible to prove the consideration. Therefore, it is

Ordered, adjudged and decreed that the true sum to be paid for the erection of the residence of the defendants by the

plaintiff is the sum of Thirty-four Thousand Five Hundred ($34,500.00) Dollars.

It is further ordered, adjudged and decreed that the defendants pay to the contractor any sums now held by them, after first paying any materialmen, or any subcontractor, any amount due them in accordance with the provisions of the contract.

It is further ordered, adjudged and decreed that any lien, whether a mechanic's lien or otherwise, by the plaintiff is hereby dissolved and its cancellation of record is hereby authorized by the provisions of this Court.

## APPENDIX

### A CONSTRUCTION AGREEMENT

This agreement, made and entered into This 26th Day of February, 1968, by and between Anthony C. Carnaggio and Eulee C. Carnaggio hereinafter called the Owners, and Waccamaw Construction Company by Gylet Lewis hereinafter called the Contractor.

Witnesseth:

Whereas, the said Anthony C. Carnaggio and Eulee C. Carnaggio are the Owners of property located in Horry County described as the, Lot Four (4), Block Eighty-two (82) of Tilghman Estates, Ocean Drive Beach, South Carolina.

and

Whereas it is the desire of the parties to this agreement to enter into an arrangement under which the Contractor will build for the Owners a Residence on said property in accordance with certain plans and specifications attached to this agreement, and incorporated herein by reference, said Residence to be paid for by the Owners in accordance with the terms of this agreement. Both the agreement and plans must be read together and not as separate agreements.

The purpose of this paragraph is merely to set forth the intent of both parties and purpose of the contract; the

following numbered paragraphs are the mutual promises between the parties. The courts look to the intent as well as the specific terms agreed upon therefore, if an important part of the agreement is omitted in the numbered paragraphs but mentioned above in the paragraph entitled "whereas" it would be sufficient to bind the parties to the agreement.

Now, therefore, in consideration of the mutual promises of the parties as set forth hereinbelow and in consideration of the agreement of the Contractor to build a Residence aforesaid together with the promise of the Owners to pay for same in accordance with the terms of this agreement, it is mutually agreed as follows.

1. Contractor agrees to build a residence as described in the plans and specifications attached hereto and made a part hereof on the property belonging to the Owners hereinabove described in accordance with the said plans and specifications, and further, the contractor agrees to provide all of the labor and materials and to perform, or to cause to be performed, all work necessary for the proper construction and completion of the said residence in conformity with the said plans and specifications, including all conditions thereof and also in conformity with the building and zoning laws and regulations of the Town of Ocean Drive Beach, State of South Carolina. It is mutually agreed that all subcontractors work and materials, except as otherwise hereafter agreed in writing between these parties, shall be purchased and handled through the office of the contractor and shall be performed under the direction and supervision of the contractor, subject to the approval of the Building Inspector of the Town of Ocean Drive Beach, S. C. The contractor shall furnish all tools and equipment necessary for the purpose of the performance of the work at his own expense. It is agreed that the selection of any subcontractor shall not create an agency relationship between the Owners and said subcontractors, but that the Owners shall have no control over the selection of said subcontractors.

2. It is further agreed that all work in connection with the erection of the residence shall be carried on with all possible speed consistent with reasonable cost, good workmanship and safety of construction, and it is further agreed that the erection of the said building shall progress continuously except for strikes, lockouts, delay in delivery of materials, acts of God or other delays beyond control of the contractor. The contractor agrees to commence the Performance of the work immediately, and to be completed by approximately July 15, 1968.

3. In consideration of the performance by the said contractor of all of the covenants and conditions contained in this agreement and contained in the plans and specifications the owners agree to pay to the contractor an amount equal to the amount of all material furnished by the contractor and the labor furnished by the contractor together with payroll taxes and Insurance, also together with the sum total of the net amount due the subcontractors performing work or furnishing work for said construction. The owners also agree to pay to the contractor, in addition to the amount specified hereinabove, a fee equal to 10% of the actual cost of the said residence, said fee to be paid after completion of said residence and acceptance thereof by the Owners. It is specifically agreed by and between the parties that notwithstanding the agreement hereinabove by the owners shall not be required, under the terms of this agreement, to pay to the contractor any amount in excess of the sum of Thirty-Four Thousand, Five Hundred Dollars ($34,500.00) which is the estimated cost of construction, plus the fee provided for herein.

4. It is further agreed by and between the parties that the payment constituting the satisfaction of the Owners obligation under the terms of this agreement shall be made in the following manner:

a. That the owner shall pay to the contractor at the time of the signing of this agreement the sum of $3,000.00.

b. That from time to time, and not more frequently than once each month, except in the case of an emergency, the

contractor shall submit to the owners proper invoices or delivery tickets covering labor, material or subcontract work performed in the construction of the improvements on the property.

c. That upon receipt of the invoices or bills hereabove referred to, the owners will cause same to be paid into the hands of the persons furnishing labor, materials or subcontracting services; that the owners shall not pay any invoice or bill for labor, materials or subcontracting services without the approval of the contractor.

5. It is further mutually agreed by and between the parties that neither party will make any change or deviation from the plans and specifications set forth as Exhibit "A" attached hereto; it is further agreed that should both parties agree to a change in the plans and specifications, then there shall be executed an agreement supplemental to this agreement setting forth the change to be made and the amount of addition to or subtraction from the contract price; it is further mutually agreed that should some change agreed upon orally and be incorporated into the work called for under the terms of this agreement, that such oral agreement shall not constitute a waiver of the provisions of this paragraph by either or both parties and notwithstanding such oral agreement, no additional cost resulting from the performance of the work shall be added to the contract price nor shall any savings resulting from the performance of said change be deducted from the contract price.

6. It is further agreed that the contractor will carry adequate Workmen's Compensation and Unemployment Compensation Insurance for all the employees to be employed upon the job and the contractor shall also carry public liability and property damage Insurance. The contractor shall also carry Builder's Risk Insurance in an amount at least equal to the estimated price as set forth in paragraph 4 hereinabove. In case of loss, it is agreed that the proceeds of all such risk insurance shall be used to restore and replace any property damaged or destroyed, and it is especially agreed

that the contractor shall not be held responsible for or liable for any loss, damage or delay caused by fire, cyclone, strikes, lockouts, civil commotion, nor shall any loss or damage be charged as a part of the work called for under the terms of this agreement.

This Agreement shall be binding on the parties hereto, their assigns, successors, representatives or administrators.

Three (3) Exhibits.

WACCAMAW CONST. CO.
GYLET LEWIS
*Contractor*

JOHN JENRETTE, JR.
*Witness*

ANTHONY C. CARNAGGIO
*Owner*

EULEE C. CARNAGGIO
*Owner*

JOHN JENRETTE, JR.
*Witness*