THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. WILLIAM H. MOREHOUS, PLAINTIFF IN ERROR.

Argued November 15, 1921—Decided March 6, 1922.

1. In the trial of a challenge to a juror, the court's findings of fact are conclusive and not reviewable.

2. A defendant is not harmed by the court's refusal to disallow a challenge for cause when the juror is subsequently peremptorily challenged by the defendant and at the conclusion of the selection of the jury the defendant has not exhausted his peremptory challenges.

3. In a challenge to the array it is incumbent upon the challenger to prove in what respect the drawing and summoning of the special panel is illegal. In the absence of proof it will be presumed that the panel was legally drawn and summoned.

4. In a trial for murder it is not erroneous to admit in evidence articles found on the person of the accused when arrested and in the room of a house occupied by him when the articles are identified as having belonged to the person murdered.

5. Where the admissibility of a confession is challenged, the primary question for the determination of the trial court is whether the defendant in confessing acted voluntarily or under the influence of hope or fear. The admission of the confession by the trial court as voluntary is not subject to legal exception and not reviewable upon a writ of error that rests alone upon such an exception if there is legal evidence to support the finding.

Where the entire record of the proceedings is brought up for review the appellate court will review the question of the admission of the confession and consider and determine whether in its admission the defendant suffered manifest wrong or injury.

6. Lay witnesses may give their opinion of a person's sanity, or insanity, provided such opinions are based on facts within the knowledge of the witness and stated.

7. A question asked of a lay witness which seeks to obtain his opinion as to a person's sanity or insanity, is properly overruled by the trial court where the witness is unable to state facts upon which to base his opinion.

8. A statement in the nature of a confession made by a defendant on trial for murder to a major in the Salvation Army is not a privileged communication and is admissible in evidence. Such a statement is also admissible if made to a spiritual adviser.

9. The question of the qualification of an expert witness is one for the determination of the trial court, whose finding is not reviewable if there is legal evidence to support it.

10. If there be testimony supporting the charge laid in the indictment the question of the defendant's guilt or innocence is for the determination of the jury and not of the court, and it is proper to deny a motion to direct a verdict for the defendant.

11. Under chapter 349 of the laws of 1921, the court of review will weigh the evidence in the same manner as upon a rule to show cause where the reason assigned is that the verdict is against the weight of the evidence. The competency of the evidence will not be considered. It will be weighed in its totality as presented to the jury.

On writ of error to the Essex County Court of Oyer and Terminer.

For the plaintiff in error, *Irvin W. Teeple.*

For the defendant in error, *J. Henry Harrison*, prosecutor of the pleas, and *John A. Bernhard,* assistant prosecutor.

The opinion of the court was delivered by

KATZENBACH, J.   The defendant below, William H. Morehous, was convicted of the crime of murder in the first degree. The jury did not as a part of its verdict recommend imprisonment at hard labor for life, under chapter 134 of the laws of 1919, and the defendant was sentenced to death.   To review this conviction a writ of error has been taken.   The

entire record of the proceedings had upon the trial is brought up for review as permitted under section 136 of the Criminal Procedure act. Assignments of errors and specification of causes for reversal have been filed. The defendant also asks this court to pass upon the question of the weight of the evidence under chapter 349 of the laws of 1921.

The evidence discloses that on the morning of January 3d, 1921, Hugh Campbell, a night watchman at the plant of the United Fur Company, in the city of Newark, was found on the floor of the plant in an unconscious condition. He was removed to a hospital and died later in the day or in the early hours of the day following. The defendant being suspected of being the perpetrator of the crime was arrested on the evening of January 4th, and when searched two pocket-books were found on his person. In his room in the house in which he lived was found a blue overcoat with brass buttons which resembled one owned by Campbell. On the evening of January 6th, the defendant was at the police headquarters with three officers, who were questioning him, when, according to their testimony, he said he would tell the whole story, which he proceeded to do. It was taken down as he related it by Frank Donnelly, a police sergeant. After it was finished, Donnelly read the statement to the defendant, who then read it slowly and aloud, and signed it in the presence of the three officers who witnessed it. At this time James Mason, a detective, came in the room, and, being informed the defendant had made a statement, read it. Upon finishing the reading of the statement, he turned to the defendant and asked him if he realized the damaging nature of the statement. The defendant replied that he did; that it was voluntary, and that he had told it freely to get it off his mind. Mason, thereupon, dictated to Donnelly an addition to the statement, to the effect that it was a true statement, voluntarily made, without promise or threats, and that Morehous personally had read it. This addition was signed by the defendant in the presence of Mason and the three other officers. The statement was a detailed confession of the crime, setting forth the visit of the defendant to the factory for the

purpose of robbing Campbell, the assault on Campbell, and the taking of his pocketbooks and overcoat. On the same evening the defendant made the statement, and shortly afterwards, he went with the officers to the factory of the United Fur Company and re-enacted in their presence the assault upon Campbell.

The causes assigned for reversal of the conviction will be considered in the order presented in the brief of counsel for the defendant. The first relate to alleged errors in the selection of a jury. They consist of the allowance of a challenge for cause made by the state's attorney, the overruling of two challenges for cause made by the defendant, and the overruling of a question asked by counsel for the defendant upon the examination of a juror. With reference to the allowance of the challenge for cause made by the state, the record discloses that the juror stated that in arriving at a verdict he would be guided by his conscience in everything and not by his oath. The court held this statement a sufficient ground for the allowance of the challenge. The court's finding was upon a question of fact and conclusive. It is not reviewable. *Patterson* v. *State,* 48 *N. J. L.* 382. The defendant was not harmed by the court's refusal to disallow the two challenges for cause made in behalf of the defendant. The record shows that the defendant after the court's refusal challenged peremptorily. The defendant at the conclusion of the drawing of the jury had not exhausted his peremptory challenges so the defendant suffered no harm. The right of a defendant is one of exclusion not of selection. *State* v. *Langhans,* 95 *Id.* 213.

It is unnecessary to consider the questions which counsel for the defendant contend were improperly overruled in the examination of juror J. Frank Mitchell, as the rulings became immaterial when the state peremptorily challenged the juror.

The defendant's counsel challenged the array on the ground that twelve of the special panel of forty-eight were absent, and there was nothing to show that the panel had been summoned according to the statute. The court asked

counsel to offer any evidence he had upon his objection to the array, to which he replied that he had no evidence. If the special panel was improperly drawn it was incumbent upon the defendant to prove it. In the absence of such proof, it will be presumed that the special panel was legally drawn and summoned.

The next assignments of error argued are those relating to the admission in evidence of the two pocketbooks taken from the person of the defendant at the time of his arrest, and the overcoat found in his room, which the state claimed were the property of Campbell. The defendant testified that the pocketbooks were purchased by him at a five and ten-cent store, and the coat at the army and navy store on Market street, in Newark. The argument advanced is that there was nothing in particular to identify these articles from similar ones, and for that reason the trial court erred in admitting them in evidence. Campbell boarded with a Mrs. Smith. Mrs. Smith was called as a witness and identified both pocketbooks as the property of Campbell. She also identified the coat as Campbell's coat. Miss Albey, with whom the defendant boarded, testified that she had never seen the coat until it was found hanging on the door of the defendant's room when searched by police officers. This evidence, which is apart from the confession of the defendant, sufficiently identified the pocketbooks and coat as the property of Campbell, and sufficiently connected the defendant with the articles to make them admissible in evidence. *State* v. *Laster,* 71 *N. J. L.* 586.

The next assignment argued relates to the admission in evidence of the statement signed by Morehous on January 6th, 1920, in the presence of the officers to which reference has been made. The state offered as witnesses the three officers, Chenoweth, Donnelly and Canlon, who were present when Morehous made the statement. They all testified to the effect that the statement was voluntarily made without promises or threats, and taken down, read and signed in the manner hereinbefore stated. They further testified with ref-

erence to the interview between Detective Mason and the defendant and the addition made to the statement. Mason also testified to the effect that the addition made to the statement was voluntarily made without promises or threats, and taken down, read and signed in the manner stated. Upon the cross-examination of Chenoweth, the question was put to him, "Didn't you say to him 'It will be better if you tell the whole story?'" To which the answer was, "I might have said that." Later, in the cross-examination, the question was asked, "You told him it would be better for him to tell the whole story?" and the reply was, "To tell the truth; yes, sir." At the conclusion of the state's case, the statement was offered and admitted and an exception taken to its admission. The defendant's counsel did not ask permission to offer proof that it was not voluntary. When the defendant testified he said that from the time of his arrest he was subjected to abusive language, blows upon the face and kicks upon the body, administered by the officers; denied sufficient sleep and sufficient food until he became so worn out by the constant grilling of the officers that he signed the confession, which had been prepared by Donnelly and the contents of which were unknown to him at the time he signed it to be rid of their presence.

The law with reference to the admission in evidence of confessions has been frequently stated in opinions of this court. In the case of *State* v. *Monich,* 74 *N. J. L.* 522, former Chancellor Pitney said:

"In the case of such a confession, where its admissibility is challenged, the primary question for the determination of the trial court is the question of fact whether the defendant in confessing acted voluntarily, or, on the contrary, was under the influence of fear or hope. If there be any legal evidence to support the finding of the trial judge to the effect that the confession was voluntarily made, his finding is not subject to legal exception, and not reviewable upon a writ of error that rests alone upon such an exception."

Other opinions of this court to the same effect are *State* v. *Young,* 67 *N. J. L.* 233; *State* v. *Hernia,* 68 *Id.* 299; *State*

v. *Kwiatkowski,* 83 *Id.* 650. In the case of *Roesel* v. *State,* 62 *Id.* 216, Mr. Justice Depue (afterwards Chief Justice) said, in discussing the admissibility of a confession: "If there be a conflict of evidence as to whether the confession was or was not voluntary, if the court decides that it is admissible, the question may be left to the jury, with the direction that they should reject it, if upon the whole evidence they were satisfied that it was not the voluntary act of the defendant." In the case of *Bullock* v. *State,* 65 *Id.* 557 (at *p.* 567), Mr. Justice Depue again said:

"But where, notwithstanding the finding of the court, there may be a doubt from the whole evidence whether the confession was or was not the voluntary act of the accused, the question should be left to the jury, with a direction that they should reject it if, upon the whole evidence, they were satisfied that it was not his voluntary act."

These statements, although *dicta,* coming from so learned a jurist, created for a time some confusion in the law. In the case of *State* v. *Monich, supra,* they are commented upon at some length by former Chancellor Pitney, who points out that the language of Mr. Justice Depue indicates a permissible practice, not one that the defendant is entitled to have observed. The question as to whether or not a defendant is entitled to have the question of the admissibility of a confession submitted to the jury, was decided in the Monich case adversely to the defendant. In that case a dying declaration had been made by the deceased (a dying declaration and confession standing on the same legal footing) and admitted in evidence. The defendant requested the court to charge, in effect, that the jury could revise the finding of the court as to the admissibility of the dying declaration. The court refused to so charge, and this refusal was sustained by this court. The question then of the admissibility of a confession is one for the determination of the court. If there be legal evidence to support the finding, the court's finding is not subject to legal exception, and not reviewable upon a writ of error that rests alone upon such exception.

As there was evidence in the present case that the confession of Morehous was voluntary, it would be unnecessary to review the evidence on this question if the case was before us only on a bill of exceptions. The entire record of the proceedings is, however, before this court upon the one hundred and thirty-sixth section of the Criminal Procedure act, which gives to the defendant the right to have the court consider and determine whether in the trial he suffered manifest wrong or injury (among other things) in the admission of the confession, as he claims by a proper specification of cause for reversal that he has by the admission of the confession suffered manifest wrong or injury. This makes it necessary to consider not whether there was evidence of the confession having been made voluntarily, but whether the sufficiency of the evidence supports the finding of the trial court that the confession was voluntary.

The evidence was in conflict. That given by the defendant will be considered, although not before the court when the confession was admitted. If believed, it made the confession the product of threats, abusive language and rough treatment, and for these reasons involuntary and inadmissible. We do not, however, credit the defendant's version of the making of the confession. Officers of experience know that a statement from an accused person obtained by threats or promises is involuntary and will not be received in evidence. With this knowledge they generally keep their statements and actions within the limits of the law. On the other hand, the sense of guilt usually weighs heavily on the accused if guilty of committing the crime. It produces wakefulness, loss of appetite, fear and despondency, until the mind is so tortured that the accused to relieve his mind from the strain confesses. When the mind is relieved and strength returns to both mind and body, then the confession is regretted, and the accused, as a rule, invents the promise and threats which he thinks or hopes will eliminate the confession or destroy its evidential weight. In the present case, the defendant's version of the obtaining of the confession is discredited by the confession itself. It contains statements which only the de-

fendant could have known and which could not have been invented by Officer Donnelly, as the defendant states. Immediately after the confession was made the defendant went to the place of Campbell's employment and re-enacted the crime in the manner detailed in the confession, which refutes the defendant's version of the manner in which the confession was obtained. We think the defendant's testimony on this subject should be discarded.

The testimony offered by the state came from the officials mentioned. It was direct and positive, to the effect that no inducements were offered or threats made or violence used to obtain the defendant's confession. The only evidence which throws any doubt upon the voluntary nature of the confession is the statement made by Chenoweth on cross-examination and hereinbefore quoted, to the effect that he told Morehous it was better to tell the truth. This statement is stressed by the defendant's counsel, who relies upon the case of *State* v. *Mowser,* 91 *N. J. L.* 395, to support the contention that such a remark holds out a hope of advantage to the accused and makes the confession obtained involuntary and hence inadmissible. In the Mowser case a county detective told the prisoner that it would be better to make a clear breast of the matter, and it was held error to have admitted under these circumstances the confession. The Mowser case is a Supreme Court case. It was taken to this court but decided here upon another ground. The opinion in this court (92 *Id.* 474) expressly states that it is unnecessary for this court to decide whether the trial judge erred in admitting the confession of the defendant as one voluntarily made by him. The view entertained by the Supreme Court with reference to the admissibility of the confession in the Mowser case has therefore never received the approval of this court. The question of the admissibility of a confession must in every case rest upon the particular facts of the case. In the present case, the remark of Chenoweth was not noticed, if made, by the other officers present. It could hardly have been then so emphasized as to be in any sense the moving cause of the confession. The defendant does not say it was. Moreover, after

this remark was made, there occurred the interview between Morehous and Mason, in which Mason called the attention of Morehous to the damaging character of the statement he had signed. Morehous replied that he knew this but he made it voluntarily and to get it off his mind. It was then the paragraph was added setting forth these facts which Morehous read and signed. In his testimony Morehous said that he was not threatened or intimidated by Mason; that Mason was too much of a gentleman to do anything of that sort. If the remark of Chenoweth had produced any effect when made in the mind of Morehous, which we doubt, such effect must have passed off entirely by the time Mason had his interview with Morehous. If the effect of the remark of Chenoweth had been done away with before the confession was made, evidence of the confession is admissible. *Bullock* v. *State,* 65 *Id.* 566. Upon a review of the testimony, we are of the opinion that the confession was voluntary and properly admitted, and that no manifest wrong or injury was done to the defendant by its admission.

The next assignment argued relates to the overruling by the trial court of a question asked a witness for the defence, Ferdinand J. Hosp, warden of the Essex county penitentiary. The question was: "Well, Warden, as a result of your observation of this man, your talks with him and otherwise while he was in your custody up there, what is your opinion as to his mental condition or his sanity?" Prior to this question the witness, who was called as a lay witness on the defendant's insanity, had been asked as to what he had seen the defendant do and what he had heard him say. His answer was that he could not recall an individual matter. Further questions failed to elicit any facts regarding the conduct of the defendant, of which the witness had knowledge, which warranted the reception of his opinion. Lay witnesses on insanity may give their opinion of a person's sanity or insanity provided such opinions are based on facts within the knowledge of the witness and stated. *Genz* v. *State,* 58 *N. J. L.* 482. Where, however, it is disclosed that the witness knows no facts upon which to base an opinion, it

is perfectly within the discretion of the trial judge to over-rule a question which seeks to obtain an opinion from a lay witness which is not based upon stated facts.

The next assignments argued relate to the allowance over objection of certain questions asked the defendant on cross-examination. These questions related to conversations which the defendant had had with a Major Niederbuehl, of the Salvation Army, and a Dr. Washington, who were asked for the purpose of laying a foundation for the contradiction of the witness. The defendant had denied on direct examination that he had committed the crime. He also denied that he had been at the factory where Campbell was employed on the night of January 1st. It was therefore proper for the state to lay the foundation on the cross-examination of the defendant for his contradiction on these matters. This was the purpose of the questions asked and objected to. We see no error in the court's ruling allowing these questions. *State* v. *Dichter*, 95 N. J. L. 203. Under these assignments the further contention is made that the statement of the defendant to Major Niederbuehl was a privileged communication, as Major Niederbuehl stood toward the defendant in the relation of a spiritual adviser. Assuming that Major Niederbuehl was a priest or clergyman, of which there is no evidence in the record, the defendant's statement to him was not privileged. No privilege of this nature existed at common law. *Wigm. Ev.*, § 2394. There is no statute in New Jersey bestowing such a privilege. *Bahrey* v. *Ponialishin*, 95 N. J. L. 128. The statement made by the defendant to Major Niederbuehl was admissible.

The next assignment relates to the court's finding that Dr. Washington was qualified as an expert witness. There was evidence of his special knowledge and experience. This question is one for the determination of the trial court whose finding is not reviewable if there is any legal evidence to support it. *Leonard* v. *Standard Aero Corporation*, 95 N. J. L. 235.

The defendant's counsel moved for the direction of a verdict for the defendant. Upon the denial of this motion error

has been assigned.   It is also specified as a cause for reversal. We think there was testimony supporting the charge laid in the indictment.   If this be so, then the question of the defendant's guilt or innocence became one for the determination of the jury and not the court.   The motion was properly denied.   *State* v. *Plough,* 88 *N. J. L.* 425.

Several portions of the court's charge were excepted to. We have examined these and are of the opinion that they contain no legal error.   The comments on the evidence made by the court were not improper.   It is within the province of a court to comment upon the evidence.   *State* v. *Hummer,* 73 *N. J. L.* 714.

This leaves for consideration only the question as to whether the conviction of the defendant was against the weight of the evidence under chapter 349 of the laws of 1921.   This statute requires that an assignment of error be made that the verdict is against the weight of the evidence. The effect of such an assignment is the same as that on a rule to show cause where the reason assigned is that the verdict is against the weight of the evidence.   The competency of the evidence is not to be considered.   The evidence is not to be weighed after eliminating such testimony as the court upon review may feel was improperly admitted, but to be weighed as it was presented to the jury in its totality.   In the present case, our review of the evidence has led us to the view that the conviction was not against the weight of the evidence.

The conviction under review is affirmed.

*For affirmance*—THE CHANCELLOR, TRENCHARD, PARKER, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER, ACKERSON, VAN BUSKIRK, JJ.   11.

*For reversal*—THE CHIEF JUSTICE, SWAYZE, BERGEN, MINTURN, KALISCH, JJ.   5.