15663

DRAYTON v. INDUSTRIAL LIFE & HEALTH INSURANCE CO.
(31 S. E. (2d), 148)

*Messrs. McEachin & Townsend,* of Florence, S. C., and *Mr. F. A. Thompson,* of Conway, S. C., Counsel for Appellant,

*Mr. W. Kenneth Suggs* and *Mr. J. Reuben Long,* both of Conway, S. C.. Counsel for Respondent,

July 17, 1944.

MR. ASSOCIATE JUSTICE FISHBURNE delivered the unanimous Opinion of the Court:

The action of the plaintiff is based upon a lost policy of insurance in the sum of $400.00 on the life of David (also called Ben) Green, alleged to have been issued by appellant, Industrial Life & Health Insurance Company, which designated the plaintiff as beneficiary. Appellant denied that it had ever issued this or any insurance policy on the life of David (Ben) Green, and alleged that no such policy had ever been in existence.

The trial resulted in a judgment for the plaintiff for the amount claimed, and the appellant appeals to this Court upon several exceptions involving the admission and exclusion of evidence, error in overruling its motion for a nonsuit and a new trial, and alleged error in the charge to the jury.

The evidence for the respondent tends to show that the policy in question was issued upon the life of David Green, a cousin of the respondent, long prior to May 1, 1937; that three years and a half before this date the insured, who had been living at Conway, moved to the town of Georgetown to enter some employment there. Just prior to leaving he went to the home of the respondent, Minnie Jackson Drayton, in the town of Conway, with Mr. Huggins, the local agent of the appellant, and delivered the policy to her. Mr. Huggins opened the policy and read it to her, and from this she

learned that she was the beneficiary named therein, and that the amount of insurance was $400.00 in case of natural death. This information was supplemented by statements from the agent to the same effect. The respondent retained the policy and paid the weekly premium of fifteen cents to Mr. Huggins for three years and a half, extending two weeks beyond May 1, 1937, on which date the insured, a negro twenty-four years of age, was killed in an affray in Georgetown. From then until this action was brought, in April, 1940, the respondent, who appears to have been an ignorant colored woman, made continuous efforts to collect the policy.

She says that Mr. Huggins, the local agent, a week after the death of the insured, gave her a form of certificate of death, and instruced her to have it filled out by the Registrar of the Bureau of Vital Statistics in Georgetown County. This she did, and the certificate of death bearing date May 15, 1937, showing that David Green had died in Georgetown County on May 1, 1937, was delivered to Mr. Huggins, according to her testimony, together with her premium receipt book, in which were entered all payments made by her on the policy. It appears that Mr. Huggins severed his connection with the insurance company on January 1, 1938, and he was succeeded by Mr. Ellis as local agent for the Conway area. Respondent says that she strove, through Mr. Huggins and Mr. Ellis, to obtain payment of the policy, but without avail.

About two years after the death of the insured, she interviewed the local magistrate at Conway, and showed him the policy. Upon his suggestion she took the policy to Mr. Dusenbury, an attorney at Conway, to have him take steps to collect it. After he had kept it about three weeks, she was told by Mr. Ellis that she had better get her policy back because the lawyers would take all the money. The testimony shows that the respondent had never been in a lawyer's office before, and had had no previous dealings with lawyers. Follow-

ing the advice of Mr. Ellis, and being nervous and apprehensive, she obtained the policy from Mr. Dusenbury and carried it to her home, where she kept it with other papers in a little black bag.

Shortly thereafter, she wrote a letter to the home office of the defendant in Atlanta with reference to the matter, and within a week a man who held himself out as the superintendent of the appellant, came to her home, and requested to see all policies or papers that she had with this insurance company. She handed him the bag containing the policy on the life of David (Ben) Green; he then told her and her husband, who was present, to make further search for any other papers she might have. She knew that she had no more, but upon his urging she and her husband went into another room for about five minutes to make further search. When they returned to the room where the purported agent was he was closing his brief case, and he told her that he had not found any policy issued by the company upon the life of David Green, but she would hear from the company.

When this man first called at the respondent's home he informed her that he had the letter which she had written to the company. He had this letter in his hand; she saw it, and although she could neither read nor write, she recognized it as the same letter which she had sent to the company. She testified that the policy was in the bag when she gave it to this alleged agent, and after he left it was not there, and that she had not seen it since that time.

After leaving his employment with the insurance company, Mr. Huggins moved to Lamar, in this State, where he engaged in farming. The respondent made two trips to Lamar from Conway in a determined effort to recover her premium receipt book, and to ascertain why her policy had not been paid. Mr. Huggins admitted in his testimony that the respondent had been to see him twice about this matter; but he denied that he ever received from her the receipt book; and denied the existence of any such policy. He stated that he had

never written or issued a policy on the life of David Green, and had never collected any premiums thereon. He admitted that he had visited the home of the respondent and knew her, and had delivered to her a policy on the life of her husband, Dave Drayton, but these policies had lapsed two weeks after issuance, for non-payment of premiums.

The magistrate, Mr. Grainger, testified that in 1938 or 1939, the respondent brought a policy to him and sought his advice about it; he stated that it was issued by some industrial company for which Mr. Huggins was agent. He could not recall the name of the insured, but stated that he lived at Georgetown, and he knew the identity of the insured at that time. The beneficiary named in the policy was the respondent, but the witness could not remember the amount of insurance. Mr. Huggins in his testimony stated that the only company he represented at Conway was the Industrial Life & Heath Insurance Company.

Mr. Dusenbury recalled that respondent came to his office, bringing an insurance policy which she wanted him to collect. This was two or three years before the action was commenced. He said that the beneficiary named in the policy was the respondent; that the policy was issued by some industrial company, and that the word "Industrial" was a part of the name of the company; that the policy was issued upon the life of a person named Green, but that he could not remember the full name, nor could he recall the amount of the insurance. After keeping the policy about two or three weeks, Mr. Dusenbury returned it to the respondent upon her request. On cross examination he stated that at the time he had the policy in his possession he made some investigation, and saw no reason why it should not be collected.

There was some other testimony on behalf of the respondent. Her husband, Dave Drayton, stated that he was present when the man holding himself out as the superintendent from Atlanta, visited his home, and he fully corroborated respondent's testimony with reference to the disap-

pearance of the policy, and the exhibition by this man of the letter written by respondent to the company. Another witness testified that he was present at the home of the respondent when she paid Mr. Huggins a premium on a policy issued on the life of David Green.

Throughout the trial of the case the appellant contended that it had never issued the policy in question; and had never at any time issued a policy of life insurance in the face amount of $400.00. It was also shown that the main business of the appellant was done with Negroes.

Because of the unusual character of this case, we have dealt with the testimony rather fully. We now turn to the issues made by the appeal.

The appellant first contends that the lower Court erred in admitting testimony for the plaintiff that the man who came to see her from Atlanta was an agent of the appellant, when proof of such agency rested only upon statements made by the alleged agent. The purpose for which this testimony was offered by the respondent was to show that the original policy was lost, in order to prove its existence and contents by secondary evidence.

It is true that agency may not be established solely by the declarations and conduct of the alleged agent, but such declarations and conduct are admissible as circumstances in connection with other evidence tending to establish the agency. *Broadway v. Jeffers,* 185 S. C., 523, 194 S. E., 642, 114 A. L. R., 1244; *Cogswell v. Cannady,* 135 S. C., 365, 133 S. E., 834; *Bass v. American Products Export & Import Corporation,* 124 S. C., 346, 117 S. E., 594, 30 A. L. R., 168.

It often occurs that direct proof of the fact of agency is impossible. This was true in the case at bar. But agency may be established by circumstances, apparent relations and conduct, and may be proved by circumstantial

as well as positive testimony. *Sturkie v. Commonwealth Life Ins. Co. of Louisville, Ky.,* 180 S. C., 177, 185 S. E., 541.

It will be recalled that the purported agent not only declared himself to be the superintendent from Atlanta of appellant, but exhibited to respondent a letter which she recognized as the letter which she had mailed to the home office of the company at Atlanta one week before. Some question is raised by appellant that it was shown on cross examination that the respondent could neither read nor write, and that she testified to no marks of an identifying nature upon the letter. But it seems to us that it may reasonably be inferred, and must have been well known to the cross examining counsel, that ignorant and illiterate Negroes, such as the respondent seemed to be, often get others to write their letters, and speak of them as their own. She was not asked who had written the letter for her, nor was she questioned as to her method of identification. She says that she sent the letter to Atlanta, and when the purported agent showed it to her she recognized it as the same letter she had sent.

We think that this evidence was sufficient to be submitted to the jury as tending to show the circumstances under which she claims to have lost the original policy. It is difficult to perceive how she could have proved it by any other method. This testimony was part of the circumstantial background of the case, which the triers of fact were required to examine for the purpose of passing upon the issue. The sufficiency of preliminary proof showing loss of a document, before specific evidence of its existence and contents will be received, rests largely in the discretion of the trial judge. *Sample v. Gulf Refining Co.,* 183 S. C., 399, 191 S. E., 209. And here we do not think this discretion was abused.

It is next urged that there is a variance between the allegations of the complaint and the evidence as to the time when the respondent lost possession of her

policy. In the complaint it is alleged that she lost the policy a short time prior to the death of the insured,—when she was ill, during which time the agents of the defendant had access to the policy. It seems to be admitted, or not disputed, that the respondent was sick at her home when the purported agent of the company visited her, and at which time she claims in her testimony that the policy disappeared. So that the only variance is, that the complaint alleges that the loss of the policy occurred prior to the death of the insured, and the testimony shows that it occurred afterward.

The record shows that when this evidence was being elicted by counsel for the respondent, not only was no objection made to it, but upon cross examination counsel for the appellant went into it exhaustively. No objection was made until the close of respondent's testimony, when the motion was made to strike upon the ground of the variance.

This case was tried first in February, 1943, resulting in a verdict for respondent. A new trial was granted by the trial Judge upon motion of the appellant, and it came up for trial again the following September. It is reasonable to suppose that appellant knew that it would be met with the same testimony—or testimony substantially the same—offered at the first trial. In its motion to strike, no suggestion was made that the appellant had been misled or taken by surprise by the testimony, nor was any motion made to require the plaintiff to amend her complaint. Nor was it contended that the variance was in any way material. This point is controlled by the case of *Langston v. Fiske-Carter Const. Co.,* 180 S. C., 113, 185 S. E., 62. The motion made by appellant was neither timely nor was compliance had with the applicable statute—Section 490 of the Code. And see *Wilson v. Kearse,* 145 S. C., 155, 143 S. E., 15.

Error is next assigned because the Court permitted the witness Dusenbury to refuse, upon the ground of privileged communication, to answer the question, why he did not collect the policy. When the witness was

asked upon cross examination why he did not collect the policy during the two or three weeks it was in his possession, he refused to answer the question upon the ground that it was a privileged communication between him and his client, the respondent. Undoubtedly the relationship of attorney and client existed between Mr. Dusenbury and the respondent; and he had already testified that he saw no reason why the policy should not be collected.

The general rule excludes from evidence confidential communications of a professional nature between attorney and client, unless the client, for whose benefit the rule is established, waives the privilege. *Clary v. Blackwell,* 160 S. C., 142, 158 S. E., 223; *State v. Chandler,* 126 S. C., 149, 119 S. E., 774; *State v. Rook,* 174 S. C., 225, 177 S. E., 143. And in our opinion, the record shows no waiver. We think there is no merit in the exception raising this question.

Nor is there any merit in the suggestion that the Court erred in allowing the witness, Magistrate Grainger, to testify over objection, that the policy brought to him by respondent was issued by the company that Mr. Huggins worked for. He said that it was issued by an industrial company for which Mr. Huggins was local agent; that he knew at the time he examined the policy who the insured was, and that the insured lived in Georgetown. He could not remember the amount of the insurance, but recalled that the respondent was the beneficiary. It appeared in evidence that Mr. Huggins represented no other insurance company during the time he operated at Conway.

Evidence is not rendered inadmissible by reason of objections going merely to its weight; nor is it essential that evidence to be admissible be sufficient in itself to establish the whole or any definite portion of a party's contention. All that is required is that the fact must legally tend to prove some matter in issue or to make a proposition in issue more or less probable, and bear directly

or indirectly thereon. 31 C. J. S., Evidence, § 160, Pages 869-871; *Powe v. Atlantic Coast Line R. Co.*, 161 S. C., 122, 159 S. E., 473.

Under the foregoing rule, we think the trial Judge committed no error in admitting the testimony of the witness Grainger.

Error is assigned because the Court refused to strike from the testimony of the respondent all references to the letter alleged to have been written by her to the defendant at its home office in Atlanta when she admitted on cross examination that she could neither read nor write. We have already disposed of this contention by what we have said in disposing of the first issue passed upon.

Appellant contends that its motion for a nonsuit should have been granted, based upon the ground that "the testimony is so incredible and so indefinite that it is not sufficient to sustain a verdict for the plaintiff." A careful examination of the evidence discloses that more than one reasonable inference may be drawn therefrom. This being true, there was no error in submitting the issue to the jury.

Finally, it is urged that the Court erred in giving this instruction to the jury: "If she is entitled to recover, she is entitled to recover the face amount of the policy. In this case I charge you, that the undisputed testimony is that if there was a policy it was $400.00. You can't find any lesser amount, neither can you find any greater amount."

It is said that this portion of the charge is incorrect, because there was testimony to submit to the jury that if the defendant issued a policy, it was in an amount less than $400.00.

From a careful examination of the record, it appears that this case was defended solely upon the theory that appellant not only did not issue the policy sued upon, but had never written or issued a policy upon the life of David Green. It

is true that appellant introduced its rate table showing the amount of insurance the company would issue for a weekly premium of fifteen cents, at the age of twenty years. The amount was said to be $285.00. But this evidence was introduced only for the purpose of disproving the existence of the policy sued upon.

The appellant contended throughout that it had issued no policy of any kind on the life of David Green. There was never any suggestion that a policy had been issued for a smaller amount.

In addition to this, any alleged error in an instruction stating a party's contention or in a statement of the issues, will be deemed waived if counsel fails to bring such misstatement to the attention of the trial Judge. *Coleman v. Lurey,* 199 S. C., 442, 20 S. E. (2d), 65; *Powell v. A. K. Brown Motor Co.,* 200 S. C., 75, 20 S. E. (2d), 636; *Hiller v. Bank of Columbia,* 96 S. C., 74, 79 S. E., 899. Even if the quoted instruction was erroneous—and in our opinion it was not—it would not be reversible, because upon its conclusion counsel for appellant did not call the attention of the Court to any misstatement or inadvertence in stating the issues, or the contentions of the appellant.

Judgment affirmed.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES STUKES, TAYLOR and OXNER concur.

On Petition for Rehearing

PER CURIAM.

In the petition for a rehearing in this case, the appellant suggests that the Court overlooked the fact that when Mr. Dusenbury, the former attorney of the respondent, was called by her to testify, he was asked upon direct examination why he did not collect the policy while it was in his hands. This question was asked at the close of the direct examination, and when Mr. Dusenbury declined to

answer upon the ground that it would involve privileged communications between him and his former client, the matter was dropped.

It is contended, however, that the question asked the witness constituted a waiver of the privilege by respondent, and in effect authorized the attorney to make answer in full. It is true that the question was first asked on direct examination by counsel for respondent, but do not think this constituted a waiver under the circumstances. The question was not so framed as to invite communications between the respondent and her former attorney.

The issue in this case was whether or not the policy of insurance had been issued by the appellant to David Green, designating the plaintiff as beneficiary. On direct examination of Mr. Dusenbury, his testimony was directed to this point alone, and on cross examination attorneys for the appellant went fully into the matters brought out on direct examination with reference to the existence of the policy, including a statement by the witness that he saw no reason why the policy should not be collected. The examination was stopped only when it was sought to bring out privileged communications between Mr. Dusenbury and his former client.

It is said in 28 R. C. L., Sec. 171, Page 580: "* * * A client may call his attorney to the stand and waive privileged communications between them by questioning him concerning such communications, and the attorney may then be cross examined concerning the communications in question. Such waiver, however, extends no farther than the subject-matter concerning which the attorney has been interrogated. And if he has not been examined as to matters of privilege between him and his client, there is, of course, no waiver thereof. * * * "

As shown by the above quotation, waiver extends only to the subject-matter testified to. Testimony of the attorney

which does not relate to privileged communications between him and his client, does, not constitute a waiver of the privileged communications. In support of this rule, see Annotations and cases cited, in 20 Ann. Cas., 1285 and Ann. Cas., 1913-A, 27.

The testimony given by Mr. Dusenbury on direct examination was not based upon, nor did it concern, any confidential or privileged communication passing between him and his former client; it has to do only with the actual existence of the policy.

It is ordered, that the petition for rehearing be, and the same hereby is, denied.