**UNITED STATES v. KEENEY.**

Cr. No. 870–52.

United States District Court
District of Columbia.

March 17, 1953.

234

Charles M. Irelan, U. S. Atty., and William Hitz, Asst. U. S. Atty., Washington, D. C., for United States.

Allan R. Rosenberg, of Washington, D. C., and Frank J. Donner, of New York City, for defendant.

HOLTZOFF, District Judge.

In view of the importance and the novel character of the questions presented in this case, the Court will state its views on the motion for a judgment of acquittal, made by defense counsel, somewhat more fully than it ordinarily does.

This is a prosecution for a contempt of Congress brought under U.S.C.A., Title 2, Section 192, the contempt consisting of a refusal on the part of the defendant to answer a question, while testifying before a Special Subcommittee of the Committee on the Judiciary of the United States Senate, on February 25, 1952.

The question which the witness, who is the defendant here, refused to answer was the following:

"Did anyone in the State Department aid you in obtaining employment with the United Nations?"

At the time the testimony was given the defendant was not an employee of the United Nations, but she had been such an employee at a previous time. She declined to answer the question on the ground that she was forbidden to do so by the rules and regulations of the United Nations, in other words, that in effect the information called for by the question was privileged. The subcommittee directed her to answer but she persisted in her refusal.

The first and principal question to be determined on the defendant's motion for a judgment of acquittal is whether the information sought was in fact privileged and whether, therefore, the defendant had a right to refuse to answer.

The subject of privileged communications is within the field of municipal law and is governed by the law of the United States and not by any principle of international law. Under the law of the United States privileged communications are strictly limited to a few well-defined categories, such as communications between attorney and client; clergyman and penitent, and physician and patient. In

addition, there is a well-recognized privilege in respect to certain official documents, as well as a privilege accorded to law-enforcement officers to decline to reveal confidential sources of information. The law does not recognize that communications between an employer and employee are privileged, even though there may be a moral duty not to disclose such communications except when ordered by a competent tribunal.

■■ Consequently, under the general law of the United States there is no privilege such as is sought to be invoked in this case. The United Nations is not clothed with the power to legislate on matters in the realm of municipal law of the United States. This proposition is axiomatic and may be stated without disparaging or detracting from the tremendous importance and vital significance of this international organization.

■ It is true that certain limited privileges and immunities are accorded to the United Nations, and in ruling upon the motion before the Court it is necessary to consider them. The Charter of the United Nations, 59 Stat. 1035, which is a treaty to which the United States is a party and is, therefore, a part of the law of the land, contains in Article 105 a provision that:

"Representatives of the Members of the United Nations and officials of the Organizatioin shall similarly enjoy such privileges and immunities as are necessary for the independent exercise of their functions in connection with the Organization."

Pursuant to this general provision the General Assembly of the United Nations adopted a regulation known as Regulation 5, which reads as follows:

"Members of the staff shall exercise the utmost discretion in regard to all matters of official business. They shall not communicate to any person any unpublished information known to them by reason of their official position except in the course of their duties or by authorization of the Secretary-General."

There was adopted and promulgated by the United Nations Organization a rule known as staff rule No. 7, which reads as follows:

"Staff members shall exercise the utmost discretion in regard to all matters of official business. They shall not communicate to any other person any unpublished information known to them by reason of their official position, except in the course of their duties or by authorization of the Secretary-General. This obligation does not cease with separation from service."

Appended to this staff rule is what is called "Interpretation and conditions," which reads, in part, as follows:

"The term 'unpublished information', in Staff Rule 7 above, is defined to include the contents of a letter or document or its arrival or dispatch; the closed proceedings of any council, committee, or other United Nations body; the appointment, resignation or any other confidential information concerning staff members."

■ The Court is of the opinion that the question involved in this case is not covered either by Regulation 5 or Staff Rule 7 and its interpretation. The question, it will be recalled, is:

"Did anyone in the State Department aid you in obtaining employment with the United Nations?"

This question does not call for the disclosure of any information known to the witness by reason of her official position. It relates to events that occurred prior to her securing the employment, and which in the nature of things would be known to her from sources outside of the United Nations. It seems to the Court that a question whether someone aided a person in getting a job relates to matters that occurred before the job was obtained or the appointment was made. The Court, therefore, reaches the conclusion that even under the regulations and rules of the United Nations the question here involved did not relate to privileged matter, and therefore, the assertion of privilege was not well founded.

236

The Court may not properly conclude this discussion without referring to two other provisions of law. One is what is known as the "Headquarters Agreement," which is an agreement between the United Nations and the United States regarding the headquarters of the United Nations. This agreement was made on June 26, 1947, at Lake Success, and was approved by Joint Resolution of Congress. Section 8 of the agreement confers upon the United Nations power to make regulations operative within the headquarters district for the purpose of establishing therein conditions in all respects necessary for the full execution of its functions. Manifestly, this is a limited authority to legislate for the area within the geographical boundaries of the seat of the United Nations, or, as it is called in the treaty, the headquarters district, which is now located in New York City. This authority, of course, cannot affect any activities or any matters that occur outside of this area.

Another statutory provision to which reference might well be made, in order to make this discussion complete, is also a provision on which the defendant relies. U.S.C.A., Title 22, Section 288d, subsection (b), confers a limited immunity on representatives of foreign governments in or to international organizations and officers and employees of such organizations. The immunity so conferred is not complete diplomatic immunity. It is only immunity from suit and legal process relating to acts performed by the persons named in their official capacity and falling within their functions as such representatives, officers or employees. Moreover, Section 288e limits even this partial immunity to persons who shall have been duly notified to and accepted by the Secretary of State as representatives, officers, or employees. There is no evidence that this has been done in respect to the defendant in this case. For both reasons, the immunity provision does not apply in this instance.

The Court, therefore, reaches the conclusion that the question here involved did not relate to a privileged matter, and that the defendant was under an obligation to answer it, and was not entitled to assert any privilege under the rules and regulations of the United Nations.

This disposes of the principal ground raised on this motion. The other points advanced need not detain us long.

The Government introduced testimony showing the pertinency of the question asked to the inquiry being conducted by the committee. Since this is a matter for the Court to determine, rather than for the jury, the Court rules that pertinency has been established.

It is also argued that this prosecution is not brought for the purpose of punishing the defendant but as a test case for the purpose of obtaining a ruling on the question of privilege. The Court may not delve into the motives and purposes of Government officials charged with prosecuting criminal offenses. Moreover, even if the purpose were as stated, that circumstance constitutes no objection to maintaining the prosecution.

In view of the questions just reviewed, the motion for a judgment of acquittal is denied.