### 21309

William C. JAMISON, Respondent, v. George HOWARD, Jr., and James Hallums, Defendants, of Whom George Howard, Jr., is Appellant.

(271 S. E. (2d) 116)

J. D. Todd, Jr. and *Bradford N. Martin*, both of *Leatherwood, Walker, Todd & Mann*, Greenville, *for appellant*.

*Jefferson V. Smith, Jr.*, of *Carter, Philpot, Johnson & Smith*, Greenville, *for respondent*.

*James D. Calmes, III*, Greenville, *for defendant Hallums*.

October 7, 1980.

LITTLEJOHN, Justice:

Plaintiff William C. Jamison brought this action against George Howard, Jr. and James Hallums, defendant, to recover damages suffered as the result of a gunshot wound inflicted at the direction of Hallums. This court heretofore reversed the granting by the trial judge of summary judgment to defendant Howard and remanded the case for trial. *See Jamison v. Howard*, 271 S. C. 385, 247 S. E. (2d) 450 (1978). Upon trial Jamison, who was made a paraplegic as a result of the shooting, was awarded a verdict of $356,000.00 actual damages, plus $144,000.00 punitive damages against both Hallums and Howard. Only Howard appeals; we affirm.

At trial the crucial issue as relates to the liability of Howard was whether Hallums was in pursuit of a collection of money owed Howard's party shop at the time of the shooting such that Hallums was acting as agent for Howard.

There is no appeal from the implicit finding of the jury that Hallums ordered his friend, Morgan, to kill Jamison. He wounded him instead.

The uncontroverted evidence at trial showed that Howard was the owner of Howard's Party Shop and employed Hallums as its manager. Jamison was the operator of the Chocolate City Lounge and on two or three occasions had purchased beer and wine from the party shop. On those occasions, Jamison would not pay for the merchandise until he had sold it at his lounge. Jamison testified that it was his understanding that these were credit purchases from the party shop. Hallums testified that on these occasions he had personally paid the cash drawer and permitted Jamison to owe him (Hallum), and that Jamison did not owe Howard any amount.

In December of 1975 Jamison bought $189.00 worth of beer and wine in such a transaction at the party shop. He was unable to repay the debt promptly because of financial difficulties. On at least two occasions Hallums spoke to Jamison about payment of the debt and both admit the conversations were of a friendly nature. Further, both admit that an extension of time was granted by adding another $20.00 to the outstanding debt. The circumstances surrounding the extension are in dispute. The testimony becomes contradictory when the events of January 26, 1976 are related.

Jamison testified as follows:

(1) Hallums and his friend Morgan came to Jamison's apartment to collect the money due;

(2) Hallums said Howard wanted his money or else wanted to see Jamison downtown;

(3) Jamison refused to pay the money or to go downtown;

(4) Hallums then handed a gun to Morgan with an order to kill Jamison; and

(5) Morgan shot Jamison, rendering him a paraplegic.

Morgan disappeared and has not been apprehended. Hallums denied that he knew anything about the attack on Jamison and asserted an alibi defense. Howard testified that he had authorized no credit sales of beer and wine, since such transactions are against state law and that Jamison owed him nothing. He bolstered Hallums' alibi testimony.

At appropriate stages of the trial, counsel for Howard moved for a nonsuit, for a directed verdict and for judgment notwithstanding the verdict. It was argued that the evidence did not make a jury issue warranting a finding that Hallums was the agent of Howard in attempting the collection. The trial judge denied all motions, holding that the jury and not the judge, should determine the agency question. Howard excepts to these rulings.

Before discussing the directed verdict issue, we first consider Howard's exception contending that certain testimony was improperly admitted into evidence. The testimony to which Howard objects involves statements allegedly made by Hallums to Jamison immediately prior to the shooting. Jamison testified on direct examination:

"A. Mr. Hallums said that George wanted his money.

. . . .

"A. He [Hallums] told me George wanted his money or he wanted to see me downtown.

. . . .

"A. He said that George wanted his money and he had to have his money."

Howard objected to this entire line of testimony on the ground that it was hearsay as to him and should not be permitted. Even if hearsay as to him, the judge was not required to exclude it. It was definitely admissible against Hallums. If this action had been against Hallums alone, it would hardly be argued that the testimony was inadmissible as it relates to the charge against Hallums. Beyond debate, evidence may be admissible for one purpose

though inadmissible for other purposes. I *Wigmore on Evidence* § 13. Likewise, evidence may be admissible against one defendant and inadmissible against another. *Player v. Thompson,* 259 S. C. 600, 193 S. E. (2d) 531 (1972). In such a situation the evidence should be admitted. The party objecting to the evidence can be protected by requesting the judge to instruct the jury as to the purpose for which the evidence is being submitted. No such charge was requested or given at the time the evidence was admitted or at the time of the general charge of the law to the jury by the judge. Further, no objection was made to the failure of the judge to give such instruction.

The issues and the facts in the case before us and those in the case of *Lazar v. Great Atlantic & Pacific Tea Co.,* 197 S. C. 74, 14 S. E. (2d) 560 (1941), are similar in many ways. In that case the manager of the A & P Store committed an assault and battery upon one of the store's competitors. Therein this court quoted, with approval, 6 C. J. S. *Assault and Battery,* § 40, p. 857:

"Where it is material to show that motive of the assailant or the existence of malice or ill will on his part, in order to enhance the damages or for any other lawful purpose, prior occurrences and both his prior and subsequent declarations, actions, and conduct, as well as those which accompany the act are legitimate evidence for that purpose."

As relates to the directed verdict issue, we agree with the argument of Howard to the effect that a denial of summary judgment does not necessarily mean that a directed verdict should be denied also. The two motions are akin in the sense that the granting of either holds as a matter of law that a party is not entitled to prevail. Summary judgment speaks in terms of "no genuine issue of fact." Directed verdict speaks in terms of "the only reasonable inference to be drawn from the whole of the evidence." A ruling on a motion for summary judgment and a ruling on a motion for a

directed verdict must stand upon the showing which has been made to the court at the time the motion is submitted.

Summary judgment by the trial judge was reversed by this court because we were of the opinion that genuine issues of fact did exist. Denial of the motion for a directed verdict must be sustained because the evidence is susceptible of more than one reasonable inference on the agency issue. When the whole of the evidence is considered, we cannot say as a matter of law that reasonable men could not disagree as to whether Hallums was or was not acting as manager in pursuit of a collection for the party shop and for Howard. In making this ruling we are, of course, (in keeping with our well established rule) considering the evidence in the light most favorable to Jamison.

Even if the evidence is evaluated without including the disputed testimony, it is apparent that more than one reasonable inference was created. Dorothy Bowers, Jamison's sister-in-law and Hallums' girlfriend, testified, without objection, that Hallums got "a cut" from the credit transaction and

"[H]e told me that the man was on his back because he had to give an account of the money in the store and stuff that goes out of the store. He had to give an account of it else it would come out of his pocket."

Clearly, the testimony of Jamison that he procured beer and wine at the party shop from Howard's manager, Hallums, and the testimony that Hallums thereafter came to his apartment in pursuit of collecting money for the products procured create a reasonable inference that Hallums was agent for Howard. In *Drayton v. Industrial Life,* 205 S. C. 98, 31 S. E. (2d) 148, 151 (1944), this court said:

"It is true that agency may not be established solely by the declarations and conduct of the alleged agent, but such declarations and conduct are admissible as circumstances in connection with other evidence tending to establish the agency.

It often occurs that direct proof of the fact of agency is impossible . . . . But agency may be established by circumstances, apparent relations and conduct, and may be proved by circumstantial as well as positive testimony."

It is the contention of Howard that notwithstanding the evidence, his own testimony plus that of Hallums negates agency to the exclusion of all other reasonable inferences. If the testimony of Howard and Hallums is accepted at full value, the agency issue becomes a close and difficult one. When a judge directs a verdict, he in effect says to the jury, "there is no reason to disbelieve the evidence; you and I are required as a matter of law to believe it." When there is reason to discredit testimony, the judge is not required to end the case as a matter of law. There was much reason to discredit the testimony of both Hallums and Howard. The evidence reveals, and the jury apparently believed, that Hallums ordered an execution. On the credibility issue, he admitted that he had been convicted of assault and battery with intent to kill. Howard has much to lose, and there are discrepancies between his testimony in court and his testimony given in deposition. The same is true of Hallums' testimony and his deposition. Under all of the facts of this case, we are of the opinion that it would have been error for the trial judge to direct the jury to believe the Howard and Hallums testimony.

It is next maintained by Howard that the trial judge erred in allowing testimony regarding Hallums' arrest and conviction for assault and battery with intent to kill. When Hallums testified, he appeared in a dual capacity: as a defendant and as a witness. Because he was a witness, Jamison's counsel was entitled to bring out the fact that Hallums had been convicted of assault and battery with intent to kill, a crime involving moral turpitude.[1] The judge meticulously directed counsel to refrain from making

---

[1] Not at issue is the question of whether assault and battery of a high and aggravated nature involves moral turpitude.

reference to the particular assault and battery involved. The question propounded and the answer given were as follows:

"Q. Are you the same James Hallums who got convicted in Greenville County Court of General Sessions on December 6th, 1976, for assault and battery with intent to kill?

"A. Yes, sir."

We find no error.

Howard next attacks the failure of the trial judge, upon motion, to sequester the jury. During the course of the four-day trial, various newspaper accounts of the trial appeared. Each account contained reference to Hallums' conviction and sentence. The sequestration of the jury is a matter within the discretion of the trial judge. The able trial judge instructed the jury to avoid newspaper and local news programs. Each day he polled the jury to determine if his instructions had been followed. We find no abuse of discretion.

Finally, Howard claims the jury charge was excessively long and confusing. While the charge on the matter of scope and course of employment is lengthy, we find no basis for any asserted error. The evidence presented at the trial of this case was sufficient for the jury to find that Hallums was acting for Howard at the time he ordered the assault and battery on Jamison. The jury requested the judge to repeat the charge on agency, but there is no indication that it misunderstood the law. Accordingly, the judgment of the lower court is

Affirmed.

LEWIS, C. J., and GREGORY and HARWELL, JJ., concur.

NESS, J., dissents.

NESS, Justice (dissenting):

I dissent, adhering to the reasons set forth in my earlier dissent, in *Jamison v. Howard*, 271 S. C. 385, 247 S. E. (2d) 450 (1978), that Hallums was not acting within the

scope of his employment when he ordered Morgan to shoot Jamison.

I would hold Howard entitled to judgment as a matter of law and grant a directed verdict.