THIS OPINION HAS NO
 PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY
 PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Robert E. Lee, Respondent,
 v.
 Regal, Inc.,
 d/b/a Diamonds, and Edward Bell, a/k/a Eddie Bell, Defendants,
 of whom Regal,
 Inc., d/b/a Diamonds, is the Appellant.
 
 
 

Appeal From Charleston County
 Mikell R. Scarborough, Master In Equity
Unpublished Opinion No. 2008-UP-071
Submitted January 1, 2008  Filed January
 24, 2008
AFFIRMED

 
 
 
 John F. Martin, of Charleston, for Appellant.
 Kerry W. Koon and Philip A. Middleton, both of Charleston, for
 Respondent.
 
 
 

PER CURIAM: In
 this tort action, Regal, Inc. (Regal) appeals the trial courts order finding
 Regal liable for the assault of
 Robert E. Lee by one of Regals employees.  We affirm.[1] 
FACTS
I.  Background
At the time of the incident on March 28, 1996, Robert E. Lee (Lee)
 was married to Jennifer Diane Lee (Jennifer) and had two small children.  Lee was
 a carpenter who generally depended on government contracts for work.  However,
 approximately six months prior to March 28, Lee faced difficulty with his
 primary employer and was no longer receiving work from the government.  Due to
 the strain on the familys budget resulting from Lees inability to find work,
 Jennifer decided to seek employment in the adult entertainment industry.  Subsequently,
 Jennifer became employed by Diamonds Gentlemens Club (Diamonds), located on Pittsburg Avenue in Charleston, South Carolina.[2]   

II.  The Incident
Diamonds has standard procedures regarding exotic dancers and
 requires each dancer disrobe by the third song of a three song set when the
 exotic dancer is performing.  However, Jennifer refused to follow the
 procedure and was suspended from her employment on March 27, 1996.  Despite her
 suspension, Lee took Jennifer to work the next evening.  When Jennifer entered
 the club, the assistant manager told her she had been fired and must leave the
 premises.  Consequently, Jennifer waited for [Lee] to return to
 their home in Summerville and called him and told him what happened and asked
 him to come pick her up.  Upon hearing of Jennifers dismissal, Lee called
 Diamonds and asked to speak with Eddie Bell, the club manager.  Following a
 heated discourse over the phone, Lee drove to Diamonds to pick up Jennifer.
After
 arriving at Diamonds, Lee told the assistant managers waiting at the entrance
 he wished to speak to Bell.  In response, [Lee] was told on several occasions [Bell] would not speak with him, and further, it was inferred it would be unsafe for him to
 talk to [Bell].  Nevertheless, Lee persisted in his attempt to speak with Bell for several minutes but finally turned and walked Jennifer back to their vehicle. 
 While Lee and Jennifer were returning to the vehicle, Bell suddenly emerged
 from the club and viciously assaulted [Lee].  
III.  Trial
 Proceedings
Subsequently, Lee brought an action against Regal and Bell, asserting Bell assaulted him in the course of Regals business.  At trial,
 Regal maintained Bell was acting outside the scope of his employment, and thus,
 Regal was not liable for the assault.  Despite Regals contention, the trial
 court ruled in favor of Lee finding (1) Bell was an employee of Regal; (2) Bell committed an assault upon Lee; (3) Bell was performing the business of Regal at the
 time of the assault; and (4) Lees injuries were a direct and proximate result
 of the assault of [Regals] employee, [Bell].  The trial court further
 concluded Regal was liable for Bells assault under the doctrine of respondeat superior and awarded Lee the sum of $116,000 damages, both actual and
 punitive, plus costs.[3]  This appeal followed. 
 
STANDARD OF REVIEW
When ruling on a directed verdict motion, the trial court is required
 to view the evidence and the inferences reasonably drawn therefrom in the light
 most favorable to the nonmoving party.  Sabb v. S.C. State Univ., 350 S.C. 416, 427, 567 S.E.2d 231, 236 (2002).  This court must follow the same standard.  Welch v. Epstein, 342 S.C. 279, 299, 536 S.E.2d 408, 418 (Ct. App. 2000).  Accordingly, this court will only reverse
 the trial court when no evidence supports the trial courts ruling.  Steinke
 v. S.C. Dept of Labor, Licensing, & Regulation, 336 S.C. 373, 386, 520
 S.E.2d 142, 148 (1999).
LAW/ANALYSIS
I.  Directed Verdict Upon
 Release of Co-Defendant
Regal
 argues the trial court erred by failing to grant a directed verdict upon the
 dismissal of Regals co-defendant, Bell.  We disagree.
Regal was sued under a respondeat superior theory by
 which an employer is made liable for the acts of an employee acting within the
 scope of his employment.  To maintain this action, it is not necessary to sue
 both the employer and employee.  However, when a principal and servant are
 sued together, a principal is not responsible for punitive damages under respondeat superior when the agent was exonerated from liability.  Austin v. Specialty Transp. Servs., 358 S.C. 298, 319, 594 S.E.2d 867, 878
 (Ct. App. 2004).  In the case sub judice, Bell was dismissed as a
 party to the case, but was not exonerated from liability.[4]  Accordingly, we find the trial court
 did not err in refusing to grant Regal a directed verdict upon Bells dismissal from the case.
II.  Course and Scope of Bells Employment
Regal
 also argues the trial court erred in failing to grant a directed verdict in
 favor of Regal because Bell was not acting within the course and scope of his employment
 at the time of the incident.  We disagree.
As
 indicated, under the doctrine of respondeat superior, an employer
 is liable for the acts of an employee acting within the scope of employment.  S.C. Ins. Co. v. James
 C. Greene & Co., 290 S.C. 171, 179, 348 S.E.2d 617, 621 (Ct. App.
 1986).  In Jamison v. Howard, 271 S.C. 385, 388-91,
 247 S.E.2d 450, 451-53 (1978), appeal after remand, 275 S.C. 344, 271
 S.E.2d 116 (1980), a majority of the supreme court rejected the Restatement
 approach in favor of the test applied in Jones v. Elbert, 211 S.C. 553,
 34 S.E.2d 796 (1945).  Under the Jones test, finding the particular act
 creating liability was within the servants authority is unnecessary. Nor must the
 act have been made for the purpose of performing the work the servant was
 employed to do.  According to the Jones court, [i]f the servant is
 doing some act in furtherance of the masters business, he will be regarded as
 acting within the scope of his employment, although he may exceed his
 authority.  211 S.C. at 558, 34 S.E.2d at 798-99 (quoting Cantrell v. Claussens
 Bakery, 172 S.C. 490, 174 S.E. 438, 440 (1934).  However, if the servant
 acts for some independent purpose of his own, wholly disconnected with the
 furtherance of his masters business, his conduct falls outside the scope of
 his employment.  Crittenden v. Thompson-Walker Co., 288 S.C. 112, 115-16, 341 S.E.2d
 385, 387 (Ct. App. 1986).  Finally, if there is
 doubt as to whether the servant in injuring a third party was acting within the
 scope of his employment, the doubt will be resolved against the master, at
 least to the extent of requiring the question to be submitted to the jury for
 determination. Id.
In Armstrong
 v. Food Lion, Inc., 371 S.C. 271, 639 S.E.2d 50 (2006), the court
 reiterated these principles and found that the employees therein were not
 acting within the scope of employment or in furtherance of the stores business
 when they attacked some customers.  The Supreme Court distinguished Crittenden
 and Jones and noted that in those cases, the assaults occurred not only in
 connection with the employers business but also with the purpose in some way to
 further the employers business.  Id.
Similarly, in the present case, conflicting evidence in the record
 supports the trial courts finding Bell acted not only in connection with the
 employers business but also in furtherance thereof when he assaulted Lee. 
 According to the record, the assault occurred near Diamonds premises during
 normal working hours.  Moreover, Bell testified he came to the club
 to prepare for a charity function and to consult with the assistant manager regarding
 the dismissal of Jennifer.  Both of these activities were incidental to Bells general duty as club manager to further the business of Diamonds.  Thus, Bell was working in connection with Regals business and within
 the scope of his employment at the time of the assault.  Furthermore, Bells relationship to Lee arose solely from his position as Diamonds manager.  Indeed, the
 purpose of the assault was to convince Lee and his wife to leave Diamonds
 premises.  Furthermore, Bell testified, it was the policy of Diamonds not to
 call the police but rather handle disruptions on their own.  Consequently,
 although Regal maintains the assault was outside the scope of Bells authority,
 the trial court was presented with conflicting inferences from which it may reasonably
 conclude the assault was an act in furtherance of Regals business.  Accordingly, since there is a factual
 basis to support the courts decision, we may not substitute our judgment for
 that of the trial court and therefore affirm the courts determination holding
 Regal liable for Bells assault on Lee.
III.  Comparative Fault, Doctrine
 of Mutual Combat, and Negligent Employment
Regal
 maintains the trial court erred by failing to apportion fault under the doctrine
 of comparative fault, by failing to apply the doctrine of mutual combat to bar
 Lees claim, and by finding Regal liable under the theory of negligent
 employment.  We find these issues are not preserved for our review. 
In
 order for an issue to be preserved for appellate review, it must have been
 raised to and ruled upon by the trial court.  See Lucas v. Rawl
 Family Ltd. Pship, 359 S.C. 505, 511, 598 S.E.2d 712, 715 (2004); see also In re Michael H., 360 S.C.
 540, 546, 602 S.E.2d 729, 732 (2004) (An issue may not be
 raised for the first time on appeal.  In order to preserve an issue for appeal,
 it must be raised to and ruled upon by the trial court.).  In
 the present case, the record contains no indication the trial court ruled on the
 issues of comparative fault,[5] mutual combat, or
 negligent employment.  Moreover, Regal
 did not file a Rule 59(e), SCRCP, motion requesting a ruling on any of these
 issues.[6] 
 Accordingly, Regals claims regarding comparative fault, mutual combat, and
 negligent employment are not preserved for our review.  
IV.  Punitive Damages
Regal
 also argues the trial court erred by awarding punitive damages in the amount of
 $50,000.  We disagree. 
Punitive damages, also known as exemplary damages, are imposed as
 punishment.  Clark v. Cantrell, 339 S.C. 369, 378-79, 529 S.E.2d 528, 533 (2000).  Punitive damages are allowed in the interest of society
 in the nature of punishment and as a warning and example to deter the wrongdoer
 and others from committing like offenses in the future.  Id.  Moreover, punitive damages serve to vindicate a private
 right by requiring the wrongdoer to pay money to the injured party.  Id. 
 Accordingly, punitive damages serve at least three important purposes: (1)
 punishment of the defendants reckless, willful, wanton, or malicious conduct;
 (2) deterrence of similar future conduct by the defendant or others; and (3) compensation for
 the reckless or willful invasion of the plaintiffs private rights.  Id.  
 
On the issue
 of punitive damages, the highest burden of proof known to the civil law is
 applicable. Austin v. Specialty Transp. Servs., Inc., 358 S.C.
 298, 313, 594 S.E.2d 867, 875 (Ct. App. 2004).  Section 15-33-135 of the South Carolina Code (2005) provides: In any civil action where
 punitive damages are claimed, the plaintiff has the burden of proving such
 damages by clear and convincing evidence.  Thus, punitive damages can only be awarded where the plaintiff
 proves by clear and convincing evidence the defendants misconduct was willful,
 wanton, or in reckless disregard of the plaintiffs rights.  Taylor v. Medenica, 324 S.C. 200, 220, 479 S.E.2d 35, 45-46 (1996), appeal
 after remand, 331 S.C. 575, 503 S.E.2d 458 (1998).
While there is no formula or standard used as a measure for
 assessing punitive damages, factors relevant to consideration of punitive
 damages include: (1) the character of the
 defendants acts; (2) the nature and extent of the harm to plaintiff which
 defendant caused or intended to cause; (3) defendants degree of
 culpability; (4) the punishment imposed; (5) duration of the conduct; (6) defendants awareness or concealment; (7) the existence of similar past conduct; (8) likelihood the award will deter the defendant or others
 from like conduct; (9)
 whether the award is reasonably related to the harm likely to result from such
 conduct; and (10) defendants wealth or
 ability to pay.  See Gamble v. Stevenson, 305 S.C. 104, 111-12, 406
 S.E.2d 350, 354 (1991); see also Welch v. Epstein, 342
 S.C. 279, 306, 536 S.E.2d 408, 422 (Ct. App. 2000) (Under Gamble, the trial court is not required
 to make findings of fact for each factor to uphold a punitive damage award.).  While the trial court did not make
 specific findings as to each factor and was not required to do so, we note that
 no post-trial motion was ever made asking the court to address these matters.

 In South Carolina, post-trial relief in the form of motions for judgment notwithstanding the
 verdict, new trial, or new trial nisi are available to defendants
 claiming a verdict excessive. See S.C.R.C.P. Rules 50 and 59. Moreover,
 although there is no precise formula for measuring a punitive damage award, if
 the trial judge is convinced that the amount awarded is overliberal, he has
 the authority and corresponding duty to reduce the verdict by order nisi. 
 Hicks v. Herring, 246 S.C. 429, 436, 144 S.E.2d 151, 154 (1965).
 (Emphasis supplied).

Gamble, 305 S.C. at 111, 406 S.E.2d at 354.  Here there is nothing in the
 record demonstrating that the judge was given an opportunity to address these
 matters pursuant to the filing of any post-trial motions.
In State Farm Mut. Auto. Ins.
 Co. v. Campbell, 538 U.S. 408, 424-25 (2003), the United States Supreme Court, in discussing punitive damages, stated:

 [W]e have been
 reluctant to identify concrete constitutional limits on the ratio between harm,
 or potential harm, to the plaintiff and the punitive damages award.  We decline
 again to impose a bright-line ratio which a punitive damages award cannot
 exceed.  Our jurisprudence and the principles it has now established
 demonstrate, however, that, in practice, few awards exceeding a single-digit
 ratio between punitive and compensatory damages, to a significant degree, will
 satisfy due process.

Campbell further explained: While these ratios
 are not binding, they are instructive. They demonstrate what should be obvious:
 Single-digit multipliers are more likely to comport with due process, while
 still achieving the States goals of deterrence and retribution . . . .  Id. at 425.
Under
 our jurisprudence, the trial court is vested with considerable discretion in
 assessing the amount of a punitive damage award.  Accordingly, the appellate
 courts review of the amount of punitive damages is limited to correction of
 legal errors. See Austin, 358 S.C. at 314, 594 S.E.2d at 875.  Thus, this
 court must affirm the trial courts punitive damages award if any evidence
 reasonably supports the trial courts factual findings.  Id. 
Applying this analysis to the present case, we find no
 due process error in the award of punitive damages awarded to Lee.  The trial court awarded Lee punitive damages approximately
 0.75 times his actual damages.  While Regal contends the punitive damage
 award was based on improper considerations by the trial court, Regal fails to
 analyze the issue of actual damages as compared to punitive damages.  Although there is no mathematical test under the due
 process analysis, we note the award does not exceed a
 single-digit ratio between Lees punitive and actual damages, consistent with Campbell.  Under Welch, Gamble, and Campbell , the punitive damage award to Lee was not excessive or grossly
 disproportionate.  Accordingly, we find the punitive damage award to Lee
 comports with due process; thus, the trial court did
 not err in awarding Lee $50,000 in punitive damages.  
CONCLUSION
Based
 on the foregoing, we hold there is sufficient evidence of record to support the
 trial courts conclusion that Regal was liable for the assault committed by Bell under the doctrine of respondeat superior.  We further hold the amount
 of punitive damages awarded to Lee was not excessive or disproportionate. 
 Accordingly, the decision of the trial court is
AFFIRMED. 
HUFF
 and PIEPER, JJ., and GOOLSBY, A.J., concur.

[1] We decide this case without oral argument
 pursuant to Rule 215, SCACR.
[2] Regal is the owner and operator of Diamonds.
[3] Specifically, the trial court concluded Lee suffered
 damages as follows: (1) medical expenses: $16,000; (2) pain and suffering:
 $50,000; and (3) punitive damages: $50,000. 
[4] Indeed, Bell pled guilty to
 simple assault prior to trial.  
[5] While pled and argued, the final order does not
 address the defense of comparative fault because negligence was not at issue. 
 Rather, the primary cause of action was the intentional tort of simple
 assault.  Thus, the doctrine of comparative fault does not apply to an
 intentional tort.  
[6] As noted by our supreme court, [e]ven after an order is filed, counsel has an obligation
 to review the order and file a Rule 59(e), SCRCP, motion to alter or amend if
 the order fails to set forth the findings and the reasons for those findings as
 required by Section 17-27-80 of the South Carolina Code and Rule 52(a), SCRCP.  Pruitt v. State, 310 S.C. 254, 256, 423 S.E.2d 127, 128 (1992).  Although
 Regal maintains a Rule 59(e) motion was filed, the record does not include any
 evidence supporting this assertion.  See Helms Realty, Inc. v. Gibson-Wall Co., 363 S.C. 334, 339, 611 S.E.2d
 485, 487-88 (2005) (The appellant has the burden of
 providing a sufficient record.).